**Eric CHARLES, on behalf of himself and all others similarly situated, Plaintiffs,**

v.

**The GOODYEAR TIRE AND RUBBER COMPANY, Defendant.**

**Civil No. 94–5626(GEB).**

United States District Court, D. New Jersey.

Sept. 5, 1997.

Allyn Zissel Lite, Goldstein, Lite & DePalma, Newark, NJ, for Plaintiffs.

B. John Pendleton, McCarter & English, Newark, NJ, for Defendant.

## MEMORANDUM OPINION

BROWN, District Judge.

This matter comes before the Court on the application of class counsel for an award of attorneys' fees and expenses. For the reasons set forth in this Memorandum Opinion, the Court will grant class counsel's application for attorneys' fees in the amount of $1,041,177.75, and expenses in the amount of $109,329.85.

## I. BACKGROUND

The facts and procedural history in this case have been sufficiently set forth on the record previously and the Court will thus only elaborate on them as necessary.

On December 13, 1996, this Court approved the settlement agreement between plaintiffs and defendant. Following settlement of the merits of the lawsuit, class counsel negotiated with Goodyear for attorneys' fees which would not in any way reduce the recovery for the class. Goodyear has agreed to pay an award of attorneys' fees to be determined by this Court, so long as such an award is not in excess of $3.85 million for attorneys' fees and $125,000 for all expenses. Goodyear has also agreed to take no position with respect to class counsel's fee application.

## II. DISCUSSION

■ "[A] thorough judicial review of fee applications is required in all class action settlements." *See In re General Motors Corp. Pick–Up Truck Fuel Tank Prods. Liab. Litig.,* 55 F.3d 768, 819 (3d Cir.), *cert. denied,* —— U.S. ——, 116 S.Ct. 88, 133 L.Ed.2d 45 (1995) [hereinafter *"GM Trucks"].* As the Third Circuit has recognized, "a defendant is interested only in disposing of the total claim asserted against it; ... the allocation between the class payment and the attorneys' fees is of little or no interest to the defense." *See Prandini v. National Tea Co.,* 557 F.2d 1015, 1020 (3d Cir.1977). Thus, even when the parties have agreed on an attorneys' fee award, the danger exists " 'that the lawyers might urge a class settlement at a low figure or on a less-than-optimal basis in exchange for red-carpet treatment for fees.' " *See GM Trucks,* 55 F.3d at 820 (quoting *Weinberger v. Great Northern Nekoosa Corp.,* 925 F.2d 518, 524 (1st Cir.1991)). The Third Circuit has further emphasized "that the court's oversight function serves not only to detect instances of 'the actual abuse [that potential attorney-class conflicts] may cause, but also [the] potential public misunderstandings they may cultivate in regard to the interests of class counsel.' " *See id.* at 821 (quoting *In re Agent Orange Prod. Liab. Litig.,* 818 F.2d 216, 225 (2d Cir.), *cert. denied,* 484 U.S. 926, 108 S.Ct. 289, 98 L.Ed.2d 249 (1987)).

In the matter at hand, the parties obviated the danger of an actual or apparent conflict of interest on the part of class counsel by not simultaneously negotiating both a class settlement and an attorneys' fees award. The parties entered into fee negotiations only after the settlement agreement was otherwise negotiated. *See* December 13, 1996 Transcript at 12, Exh. 1 attached to Plaintiff's Appendix.

■ "[A] court making or approving a fee award should determine what sort of action the court is adjudicating and then primarily rely on the corresponding method of awarding fees." *See GM Trucks,* 55 F.3d at 821. However, the decision regarding which method to ultimately use is within the sound discretion of the district court. *See id.* at 783, 821. As several district courts have noted, "[d]etermining an appropriate fee is 'far from an exact science.' " *See In re Prudential Ins. Co.,* 962 F.Supp. 572, 578 (D.N.J. 1997) (citing *Matter of Superior Beverage/Glass Container,* 133 F.R.D. 119, 128 (N.D.Ill.1990) ("The best short statement may be that an award should be reasonably arbitrary—meaning that there is no magic in the precise final numbers but that they must be reasonable, which is to say, the result of considered, articulated and fair judgments.")).

■ There are two basic methods for evaluating the reasonableness of an attorneys' fees award—the lodestar method and the percentage-of-recovery method. Each method has distinct attributes suiting it to particular types of actions. *See GM Trucks,* 55 F.3d at 820. Courts generally regard the lodestar method, which uses the number of reasonable hours times a reasonable rate, as the appropriate starting point for statutory fee shifting cases. "Because the lodestar award is decoupled from the class recovery, the lodestar assures counsel undertaking socially beneficial litigation ... an adequate fee irrespective of the monetary value of the final relief achieved for the class." *Id.* at 821. The lodestar method has the benefit of relieving the court of the burden of making a subjective evaluation as to the monetary value of the intangible rights often litigated in civil rights actions. "Outside the pure statutory fee case, the lodestar rationale has appeal where as here, the nature of the settlement evades the precise evaluation needed for the percentage-of-recovery method. On the other hand, the lodestar method has been criticized as giving class counsel the incentive to delay settlement in order to run up fees while still failing to align the interests of the class and its counsel, and for not rewarding counsel incrementally for undertaking the risk of going to trial." *Id.*

The other method used by courts to determine the reasonableness of an attorneys' fee award is the percentage-of-recovery approach. "Courts use the percentage-of-recovery method in common fund cases on the theory that the class would be unjustly enriched if it did not compensate the counsel

responsible for generating the valuable fund bestowed on the class." *Id.* "In the typical case, the Court should apportion the fund between the class and its counsel in a manner that rewards counsel for success and penalizes it for failure." *Prudential,* 962 F.Supp. at 579. Thus, in using the percentage-of-recovery method, the district court must "make some reasonable assessment of the settlement's value and determine the precise percentage represented by the attorneys' fees. The problem, however, is not simple, for arguably, any settlement based on the award of certificates would provide too speculative a value on which to base a fee award." *GM Trucks,* 55 F.3d at 822.

"While the Third Circuit has expressed a preference for use of the percentage-of-recovery method in common fund cases, neither that court nor the United States Supreme Court has held that use of the [percentage-of-recovery] method is exclusive or mandated in such cases." *Prudential,* 962 F.Supp. at 579. In fact, the Third Circuit has stated that "the ultimate choice of methodology will rest within the district court's sound discretion." *GM Trucks,* 55 F.3d at 821. "Certainly, the court may select the lodestar method in some non-statutory fee cases where it can calculate the relevant parameters (hours expended and hourly rate) more easily than it can determine a suitable percentage to award. But the court must vigilantly guard against the lodestar's potential to exacerbate the misalignment of the attorneys' and the class's interests." *Id.* at 822. Although the settlement in the above-captioned matter is of the common fund type, this Court finds that the loadstar methodology is more appropriate for determining class counsel's fee, as the relevant parameters (hours expended and

hourly rate) are more easily calculated than a suitable percentage-of-recovery award.[1]

The settlement approved by this Court on December 13, 1996 provides for equitable relief which is to address the alleged deceptive practices averred in plaintiffs' complaint. In addition to the remedial measures, Goodyear has agreed to distribute credit vouchers to members of the class, regardless of whether they can show that they were actually damaged. The credit vouchers are: (1) fully transferable; (2) good for 30 months; (3) useable for approximately 86% of Goodyear's products and service sales; and (4) are expected to reach 3.8 million class members. *See* Declaration of Professor Ziv Carmon (hereinafter "Carmon Dec.") at 3.

Class counsel retained the expert services of Professor Ziv Carmon of Duke University's Fuqua School of Business to render an opinion as to the value of the credit voucher portion of the settlement. Professor Cannon estimated that the actual value of the credit voucher portion of the settlement is $20.3 to $40.4 million, with a mid-point estimate of $30.35 million. Carmon Dec. at 2. Class counsel maintain that the value of the equitable relief component of the settlement is at least $10 million since Goodyear estimates that the cost of implementing the equitable remedies will cost Goodyear at least $10 million. *See* Certification of Allyn Z. Lite (hereinafter "Lite Cert.") ¶ 29.

Class counsel contend that the settlement has a total face value of $85,975,000 ($70 million—face value of the credit vouchers, plus the $10 million estimated cost for the equitable relief obtained under the settlement, plus $3.975 million—the maximum amount Goodyear has agreed to pay class counsel for attorneys' fees and expenses, plus the estimated administration and notice costs

1. Moreover, this Court finds that many of the shortcomings of the lodestar method are not applicable in the case at bar. One of the primary advantages of the percentage-of-recovery method, and a disadvantage of the lodestar method, is that the percentage-of-recovery method is thought to equate the interests of class counsel with those of the class members and encourage class counsel to prosecute the case in an efficient manner. *See generally Court Awarded Attorney Fees,* 108 F.R.D. 237 (Oct. 8, 1985) (discussing the advantages and disadvantages of the lodestar method in class action attorneys' fee awards). However, in the matter at hand, class counsel themselves contend that they prosecuted and settled this case quickly and efficiently, *see* Lite Cert. ¶ 47 ("The efficiency with which the litigation was conducted, achieving such a substantial result in less than two years of litigation....."), and the Court sees no evidence of a misalignment of class counsel's and the class's interests.

of at least $2 million to be borne by Goodyear), *see* Lite Cert. ¶ 30, and that the settlement agreement appears to have an estimated actual value of $46.325 million ($30.35 million—the mid-point estimate of the value of the credit voucher portion of the settlement, plus the $10 million estimated cost for the equitable relief obtained under the settlement, plus $3.975 million—the maximum amount Goodyear has agreed to pay class counsel for attorneys' fees and expenses, plus the estimated administration and notice costs of at least $2 million to be borne by Goodyear). *See* Plaintiff's Brief at 5 n. 3.

As noted by the Third Circuit *In re General Motors Corp. Pick–Up Truck Fuel Tank Prod. Liab. Litig.*, 55 F.3d 768 (3d Cir.1995), any settlement based upon an award of certificates may prove to be too speculative a value on which to base a fee award. *See id.* at 822. Professor Carmon has valued the voucher portion of the settlement at $20.3 to $40.4 million, with a mid-point estimate of $30.35 million. Carmon Dec. at 2. However, after careful review of Professor Carmon's declaration, even in accepting Professor Carmon's valuation range, this Court fails to find any substantiation for class counsel's contention that the mid-point estimate of $30.35 is an accurate reflection of the actual value of the voucher portion of the settlement. Moreover, the mere fact that the remedial measures set forth in the settlement agreement will cost Goodyear at least $10 million to implement, does not necessarily mean that the benefit to the class will also equal $10 million. While class counsel contend that the value of this equitable relief is significantly greater than $10 million, *see* Lite Cert. ¶ 29, class counsel has failed to provide this court with any evidence to make such a determination.[2]

As a result of the difficulty in making some reasonable assessment of the settlement's value, this Court will utilize the lodestar method in awarding class counsel's attorneys' fees.[3] The Supreme Court has held that the "most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40 (1983). The result of this computation is called the lodestar, and is strongly presumed to yield a reasonable fee. *See Washington v. Philadelphia County Court of Common Pleas*, 89 F.3d 1031, 1035 (3d Cir. 1996). "If contested, the challenger must 'specify with particularity the reasons for its challenge and the category (or categories) of work being challenged, [but] need not point to each individual excessive entry.'" *Rush v. Scott Specialty Gases, Inc.*, 934 F.Supp. 152, 154 (E.D.Pa.1996) (quoting *Bell v. United Princeton Prop., Inc.*, 884 F.2d 713, 721 (3d Cir.1989)). In submitting a fee application, the attorney should make "a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary, just as a lawyer in private practice ethically is obligated to exclude such hours from his fee submission." *See Hensley*, 461 U.S. at 434, 103 S.Ct. at 1939–40. In arriving at a fee award, the district court must "provide a concise but clear explanation of its reasons for" the award. *Id.* at 437, 103 S.Ct. at 1941. A district court possesses considerable discretion in fixing the fee amount in light of the objections, but may not make reductions on its own. *See Rush*, 934 F.Supp. at 155 (citing *Bell*, 884 F.2d at 721). As defendant has not objected to the fee

---

**2.** David Boies attests in his certification that "In addition, it is my understanding that the settlement includes injunctive relief which defendant has estimated would cost and/or be worth $10 million." Certification of David Boies ¶ 26. However, Boies fails to provide any substantiation for such a claim, even if it was made by the defendant.

**3.** This Court sees no evidence of a misalignment of class counsel's and the class's interests should a lodestar fee be awarded. However, a result wherein the plaintiff class receives intangible injunctive relief, together with credit vouchers of limited value, even if transferable, while class counsel receive a Court ordered fee in cold, hard cash for greater than their reasonable hours times a reasonable rate, cannot be defended in this case. The class action suit is designed to serve the public good, and the benefit to lawyers cannot be allowed to predominate. One may note that, although class counsel assign considerable value to the vouchers, they have not proposed that they themselves receive the transferable vouchers as compensation.

amount, this Court is constrained to accept class counsel's submission of 3402.35 total hours as reasonable.

■ Generally, "a reasonable hourly rate is calculated according to the prevailing market rates in the community." *Washington*, 89 F.3d at 1035. "[A] district court may not set attorney's fees based upon a generalized sense of what is customary or proper, but rather must rely upon the record." *Coleman v. Kaye*, 87 F.3d 1491, 1510 (3d Cir.1996), *cert. denied*, — U.S. —, 117 S.Ct. 754, 136 L.Ed.2d 691 (1997). "The plaintiff bears the burden of producing sufficient evidence of what constitutes a reasonable market rate for the essential character and complexity of the legal services rendered in order to make out a prima facie case." *Smith v. Philadelphia Housing Authority*, 107 F.3d 223, 225 (3d Cir.1997). In the matter at hand, class counsel has fulfilled its burden of providing sufficient evidence that its hourly rates are reasonable in light of the prevailing market rates in the community. *See* Affidavit of Melvyn I. Weiss ¶ 13 ("I note that the hourly rates of plaintiff's counsel are well within the range of the

rates approved by courts nationally, and in this District in particular, for counsel handling this type of national consumer class action. I have personal familiarity with the hourly rates and quality of work performed in other litigations by some of plaintiff's counsel here, including Goldstein Lite & DePalma, the Much, Shelist Firm and Meredith Cohen & Greenfogel. . . ."). Consequently, class counsel's total lodestar is $1,041.177.75 (a total of 3402.35 billable hours at the various firm billing rates).[4]

■ Class counsel submit that a positive multiplier of 3.7 is warranted. However, this Court finds that a positive multiplier is not warranted as the fee award is more than reasonable and already accounts for the risks of litigation, the contingent nature of the case, the results achieved and the quality of representation. Consequently, this Court declines to implement a positive multiplier.

Class counsel have also submitted an application for expenses incurred during the litigation of this matter in the amount of $109,344.27. As Goodyear has agreed to pay an award of expenses determined by this Court

**4.** The hourly rates and total hours for all class counsel are as follows:

| FIRM NAME | HOURLY RATE (RANGE) | TOTAL HOURS | LODESTAR |
|---|---|---|---|
| Goldstein Lite & DePalma (as of 1/31/97) | $95.00–$380.00 | 1033.2 | $ 325,741.00 |
| Much Shelist Freed Denenberg Ament Bell & Rubenstein (as of 12/31/96) | $95.00–$410.00 | 544.8 | $ 161,138.00 |
| Meredith Cohen & Greenfogel (as of 12/31/96) | $290.00–$405.00 | 117.25 | $ 37,666.25 |
| Howard L. Visnick, Esq. (as of 5/31/96) | $250.00 | 295.0 | $ 73,750.00 |
| Hutton & Hutton (as of 12/31/96) | $75.00–$350.00 | 317.25 | $ 99,862.50 |
| Commercial Litigation Group (as of 1/31/97) | $250.00–$350.00 | 1094.85 | $ 343,020.00 |
| **TOTALS:** | | 3402.35 | $1,041,177.75 |

*See* Affidavit of Allyn Z. Lite Exh. A (hereinafter "Lite Aff."). A breakdown of each firm's hourly rate and billable hours by attorney are attached as Exhs. B, C, D, E, F & G to the Lite Aff.

so long as such an award is not in excess $125,000 for all expenses, this Court awards class counsel a total of $109,329.85 in expenses.[5]

## III. CONCLUSION

For the foregoing reasons, class counsel's application for an award of attorneys' fees in the amount of $1,041,177.75, and expenses in the amount of $109,329.85 will be granted. An appropriate form of Order is filed herewith.

## ORDER

For the reasons set forth in the Memorandum Opinion filed in the above-captioned matter on this date.

IT IS on this 5th day of September, 1997;

ORDERED that class counsel's application for an award of attorneys' fees in the amount of $1,041,177.75, and expenses in the amount of $109,329.85 be and hereby is GRANTED.

---

**5.** The expenses for all class counsel are as follows:

| FIRM NAME | EXPENSES |
| --- | --- |
| Goldstein Lite & DePalma (through 1/31/97) | $ 14,429.97 |
| Much Shelist Freed Denenberg Ament Bell & Rubenstein (through 12/31/96) | $ 20,919.91 |
| Meredith Cohen & Greenfogel (through 12/31/96) | $     624.85 |
| Howard L. Visnick, Esq. (through 5/31/96) | $ 49,651.00 |
| Hutton & Hutton (through 12/31/96) | $ 16,892.51 |
| Commercial Litigation Group (through 12/31/96) | $   6,811.61 |
| **TOTAL EXPENSES:** | $109,344.27 |

*See* Lite Aff. Exhs. B, C, D, E, F & G.