**Richard DUHAIME; James W. Yoder; Donna M. Yoder; Theodore A. Peck; John Sullivan; and Clarissa Sullivan, On Behalf of Themselves and All Others Similarly Situated, Plaintiffs,**

v.

**JOHN HANCOCK MUTUAL LIFE INSURANCE COMPANY; John Hancock Variable Life Insurance Company; and John Hancock Distributors, Inc., Defendants.**

No. CIV.A. 96–10706–GAO.

United States District Court, D. Massachusetts.

Dec. 31, 1997.

Glen DeValerio, Michael G. Lange, Berman, DeValerio & Pease, Boston, MA, Keith M. Fleischman, Melvyn I. Weiss, Barry A. Weprin, Brad N. Friedman, Milberg, Weiss, Bershad, Specthrie & Lerach, New York, NY, Douglas M. Brooks, David Pastor, Kenneth G. Gilman, Gilman & Pastor, Boston, MA, John J. Stoia, Jr., Andrew W. Hutton, Milberg Weiss Bershad Hynes & Lerach, San Diego, CA, John K. Grant, Milberg Weiss Bershad Hynes & Lerach, San Francisco, CA, Andrew S. Friedman, Sullivan

Bunch H., Bonnett Fairbourn, Friedman & Balint, P.C., Phoenix, AZ, Lawrence D. Shubow, Boston, MA, Joseph D. Ament, Michael B. Hyman, William H. London, Much, Shelist, Freed, Denenberg, Ament, Bell & Rubenstein, Chicago, IL, W. Christian Hoyer, Tampa, FL, for Richard Duhaime.

Glen DeValerio, Michael G. Lange, Berman, DeValerio & Pease, Boston, MA, Keith M. Fleischman, Melvyn I. Weiss, Barry A. Weprin, Brad N. Friedman, Milberg, Weiss, Bershad, Specthrie & Lerach, New York, NY, Douglas M. Brooks, David Pastor, Kenneth G. Gilman, Gilman & Pastor, Boston, MA, John J. Stoia, Jr., Andrew W. Hutton, Milberg Weiss Bershad Hynes & Lerach, San Diego, CA, John K. Grant, Milberg Weiss Bershad Hynes & Lerach, San Francisco, CA, Andrew S. Friedman, Sullivan Bunch H., Bonnett Fairbourn, Friedman & Balint, P.C., Phoenix, AZ, Lawrence D. Shubow, Boston, MA, Joseph D. Ament, Michael B. Hyman, William H. London, Much, Shelist, Freed, Denenberg, Ament, Bell & Rubenstein, Chicago, IL, W. Christian Hoyer, Tampa, FL, Ronald R. Parry, Arnzen, Parry & Wentz, P.S.C., Covington, KY, Stephen Hubbard, Cantilo, Maisel & Hubbard, LLP, Dallas, TX, for Maureen Hahn, Theodore A. Peck, John Sullivan, Clarissa Sullivan.

John G. Fabiano, Jeffrey B. Rudman, Hale & Dorr, Boston, MA, Edwin G. Schallert, Debevoise & Plimpton, New York, NY, for John Hancock Mutual Life Ins. Co., John Hancock Variable Life Ins. Co.

John G, Fabiano, Peter A. Spaeth, Andrea J. Robinson, Hale & Dorr, Boston, MA, for John Hancock Distributors, Inc.

J. Allen Holland, Jr., John R. Cavanaugh, Lynch, Brewer, Hoffman & Sands, Boston, MA, Diane A. Nygaard, Overland Park, KS, for Katherine Rose, Richard Beauvais, Phyllis Beauvais, Timothy Murphy, Deloris Goldberg.

Paul D. Gifford, Atty. Gen. of State of Cal., Oakland, CA, for California Ins. Com'r.

Joseph B. Lichtblau, Boston, MA, for Texas Plaintiffs.

Douglas Stevick, Brian Wolfman, Public Citizen Litigation Group, Washington, DC, for Howard M. Metzenbaum.

## MEMORANDUM AND ORDER REGARDING ATTORNEYS' FEES

O'TOOLE, District Judge.

The Court here considers class counsel's petition for approval of the payment of attorneys' fees in the amount of $39 million, plus expenses not to exceed $750,000, in accordance with the parties' agreement.

### Background

This petition arises out of a settlement of a class action against the defendants John Hancock Mutual Life Insurance Company, John Hancock Variable Life Insurance Company, and John Hancock Distributors, Inc. (collectively "John Hancock" or "Hancock"). The history of the litigation and the details of the settlement are set forth in this Court's memorandum approving the settlement agreement. That agreement provides that "Lead Counsel agrees to make, and the Company [John Hancock] agrees not to oppose, an application for the award of Attorneys' Fees in the Action not to exceed a total of $39 million plus expenses not to exceed $750,-000." The agreement further provides that "such fees will be paid by the Company within 10 business days of the entry of the Final Order and Judgment." (Amended Stipulation of Settlement § XIV.)

### Judicial Review of Attorneys' Fees in Class Actions

■ The Court of Appeals has held that a "clear-sailing" [1] fee agreement like the one negotiated here must receive close judicial scrutiny. *Weinberger v. Great Northern Nekoosa Corp.*, 925 F.2d 518, 525 (1st Cir.1991). The fact that the fee award does not come out of a common fund does not eliminate the need for careful review. "[W]hen a fee application is submitted ancillary to, or as part of,

---

1. That court defined a "clear sailing" agreement as "one where the party paying the fee agrees not to contest the amount to be awarded by the fee-

setting court so long as the award falls beneath a negotiated ceiling." *Great Northern Nekoosa,* 925 F.2d at 520 n. 1.

the termination of a class action, the district court should ordinarily determine the reasonableness of the fees, notwithstanding that the source of payment does not directly impair the class recovery." *Great Northern Nekoosa*, 925 F.2d at 522. The reason for this is that there is a danger "lawyers might urge a class settlement at a low figure or on less-than-optimal basis in exchange for red-carpet treatment on fees." *Id.* at 524. *See also In re General Motors Corp. Pick–Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 819–20 (3d Cir.1995)(recognizing that even when fees do not come directly from a settlement fund, judicial scrutiny is required because " 'a defendant is interested only in disposing of the total claim asserted against it; ... the allocation between the class payment and the attorneys' fees is of little or no interest to the defense.' ")(quoting *Prandini v. National Tea Co.*, 557 F.2d 1015, 1020 (3d Cir.1977)).

Moreover, the court has a responsibility to consider the "potential public misunderstandings" caused by negotiation of fee awards. *In re "Agent Orange" Prod. Liab. Litig.*, 818 F.2d 216, 225 (2d Cir.1987), *cert. denied*, 484 U.S. 1004, 108 S.Ct. 695, 98 L.Ed.2d 648 (1988)(citing *Susman v. Lincoln Am. Corp.*, 561 F.2d 86, 95 (1977)). *See also General Motors Corp. Pick–Up Truck*, 55 F.3d at 820. In *General Motors*, the Third Circuit specifically instructed the district court to "be alert to the presence in the fee agreement of any ... appearance of abuse capable of creating a public misunderstanding." *Id.*

### Fee Calculation Method

Class counsel contend that in cases like this where a benefit is created for the class, the court should measure an award of attorneys' fees according to a percentage-of-the-fund ("POF"), or percentage-of-the-benefit conferred on the class, instead of using the so-called "lodestar" method, which bases payment on the billable value of the number of hours spent by counsel in prosecuting the litigation and settlement. The Court of Appeals for this Circuit has held that "in a common fund case the district court, in the exercise of its informed discretion, may calculate counsel fees either on a percentage of the fund basis or by fashioning a lodestar." *In re Thirteen Appeals*, 56 F.3d 295, 306 (1st Cir.1995). A district court should be flexible in its award of attorneys' fees, and may use "a combination of both methods when appropriate." *Id.* at 308.

In this case, the POF method of calculating fees more appropriately aligns the interests of the class with the interests of the class counsel—the larger the value of the settlement, the larger the value of the fee award. There are other advantages of the "POF" approach as well. It is "less burdensome to administer than the lodestar method," it "enhances efficiency" and does not create a "disincentive for the early settlement of cases." *In re Thirteen Appeals*, 56 F.3d at 307.[2] Class counsel's argument that one of the "distinct advantages" of the POF method of payment is that it focuses "on result, rather than process, which better approximates the workings of the marketplace," is persuasive. The POF method resembles the contingent fee arrangements often made between attorneys and clients in cases like this—the greater the value secured for the class, the greater the fee earned by class counsel, and conversely, the smaller the value created for the class, the smaller the fee award.

### Valuation of the Settlement

Once it is determined that a POF method to calculate the attorney fee awards is appropriate, the next task is to determine the value of the "fund" created for class members. Class counsel estimate the benefit created for the class to be at least $368 million for the Alternate Dispute Resolution ("ADR") Relief and $48 million for General Policy Relief and Monthly Deduction Relief. (Fee Petition at 28.) The requested fee represents 9.3 percent of a fund having that combined value. The difficulty here is that the actual value of the settlement is presently unknown. It will not be known until class

---

**2.** There are also some drawbacks of the "POF" approach. For example, "it may result in the overcompensation of lawyers in situations where actions are resolved before counsel has invested significant time or resources." *In re Thirteen Appeals*, 56 F.3d at 307.

members have chosen and received either General Policy Relief or an award through the ADR process.

It might be possible to project a value for the settlement by comparing this settlement to similar ones. Class counsel have actually entered into similar settlements with other insurance companies.[3] However, those settlements are different enough from the present one that they do not provide a reliable indication of what the actual value of the settlement will be in this case. The standards for receiving high scores in this settlement are more favorable in some respects to class members than in previously negotiated settlements, and this settlement has presumptions automatically giving class members high scores which are either absent or only present to a limited extent in those other settlements. Accordingly, the Court agrees with counsel that the experience in other cases is not a good predictor for this case.

If there is no predictive value from the prior settlements, the only basis for valuing this settlement—in advance—is estimation. For this, counsel offer the expert valuation by Robert Hoyer, who has calculated the likely aggregate value of ADR Relief to be $368,584,000.[4] (Hoyer Aff. ¶ 9.) While the Court does not question Mr. Hoyer's computations or credentials, it must be noted that his calculations are based on assumptions about certain variables: (1) claim utilization, or the extent to which class members will receive remedies; (2) remedy distribution, or the type of remedy received; and (3) score distribution, or the score assigned to the claim. (Hoyer Aff. ¶ 8.) (*See also* Metzenbaum Objection at 14.)

The objector Metzenbaum extrapolated from Hoyer's calculations to arrive at the values Hoyer presumably assigned to these variables (something Hoyer himself does not mention in his report). Metzenbaum calculates that Hoyer estimates that 3.34 percent of the class members will both file a claim in the ADR process and receive a score of greater than 0. Hoyer estimates that 32.5 percent of the policies presented to the ADR process will receive a score of "3." The record does not contain enough information to judge the reliability of these estimates. As Metzenbaum observes, "these projections may be unduly modest, or they may be wildly optimistic." (Metzenbaum Objection at 14.)

Counsel say that the objectors have not "offered concrete reasons as to why the assumptions used in valuing the Settlement are in error." (Pls' Supp. Mem. at 31.) By the same token, however, counsel have not explained why the assumptions are correct. Given the Court's responsibility to scrutinize fee awards independently, the Court cannot rely on unjustified assumptions and cannot give final approval to a percentage-of-recovery fee award without a more certain valuation of the settlement.

### Staging of the Fee Award

■ The practical solution to this problem is to make sure the fee awarded is appropriate to the value actually received by the class members. This can be done by staging the payment of the award, with an opportunity to adjust it if circumstances warrant. This kind of approach has been used by other courts faced with fee requests based on estimates of the value of a "future" settlement fund to the class. *See, e.g., Bowling v. Pfizer, Inc.*, 922 F.Supp. 1261, 1283–84 (S.D.Ohio), *aff'd*, 102 F.3d 777 (6th Cir.1996)(holding back large proportion of fee award until additional "future" benefits to class were actually paid into class fund); *Strong v. BellSouth Telecommunications, Inc.*, 173 F.R.D. 167, 172

3. *See In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 962 F.Supp. 572 (D.N.J.1997)(attorneys' fees opinion), *appeal filed; In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 962 F.Supp. 450 (D.N.J.1997)(fairness opinion), *appeal filed; Natal v. Transamerica Occidental Life Ins. Co.*, No. 694829 (Cal.Sup.Ct. July 28, 1997); *Michels v. Phoenix Home Life Mut. Ins. Co.*, No. 5318–95, 1997 Misc. LEXIS 171 (N.Y.Sup.Ct. Jan. 3, 1997); *Willson v. New York Life Ins. Co.*, No. 94/127804, 1995 N.Y. Misc. LEXIS 652 (N.Y.Sup.

Ct. Nov. 8, 1995), *aff'd*, 228 A.D.2d 368, 644 N.Y.S.2d 617 (1996), *appeal denied*, 89 N.Y.2d 807, 677 N.E.2d 289, 654 N.Y.S.2d 717 (1997), *cert. dismissed*, —— U.S. ——, 117 S.Ct. 2500, 138 L.Ed.2d 1006 (1997).

4. Hoyer performed valuations for other insurance settlements as well, but plaintiffs offer no evidence as to the accuracy of those valuations.

(W.D.La.1997)(denying fee petition in entirety because actual value of settlement fund based on credits sought by class members was $2 million, whereas class counsel had estimated its value beforehand at $64.5 million); *Voege v. Ackerman*, 70 F.R.D. 693, 695 (S.D.N.Y.1976)(in above case, awarding plaintiffs' counsel a smaller fee than requested because shareholder participation in settlement had been minimal and actual financial benefit to them was "almost zero"); *Voege v. Ackerman*, 67 F.R.D. 432, 436–37 (S.D.N.Y.1975)(reserving fee determination until all claims of shareholders entitled to participate in settlement had been filed and adjudged because extent of settlement's benefit to class could not be determined with any degree of exactitude beforehand). *Cf. Charles v. Goodyear Tire and Rubber Co.*, 976 F.Supp. 321 (D.N.J.1997)(choosing to use lodestar method to award fees out of settlement's so-called "future" common fund because of difficulty, despite existence of expert valuations, in making reasonable assessment of attorneys' fees based on percentage of recovery method, where valuation was based on estimates of class's utilization of credit vouchers/certificates).[5]

Counsel argue against staging of the fee award. They contend that because they agreed in the settlement not to request a fee award of more than $39 million, they "waived the right" to a fee based on a percentage of the value conferred on the class should that value actually exceed the estimates. "Having contractually foreclosed any upside potential, it would be fundamentally unfair to subject any fee award to a staggered payment plan based on class participation in the settlement." (Pls' Supp. Mem. at 35.)

There is some merit to that argument. The fee was indeed negotiated at arm's length, and its payment does not in any way diminish the relief available to the class, as payment of the fee from a common fund would. Indeed, the principal evils identified by the Court of Appeals as lurking in "clear sailing" fee agreements—extortion and collusion—are not present in this case. *See Great Northern Nekoosa*, 925 F.2d at 524. This Court has concluded that the separate, arm's length negotiation of the attorneys' fees after the other substantive terms of the settlement had been resolved convincingly negative any suspicions that might arise about those sorts of problems.

Nevertheless, the proportionality of the fee to the relief actually accruing to the class is an equally important consideration in assessing the reasonableness of the fee award in the present case, because it is that relationship that litigants in future cases will look to in structuring their own arrangements regarding attorneys' fees. Any fee approved by this Court "is not only a matter of public record, it becomes part of the great body of our law." *Codex Corp. v. Milgo Elec. Corp.* 717 F.2d 622, 632 (1st Cir.1983), *cert. denied*, 466 U.S. 931, 104 S.Ct. 1719, 80 L.Ed.2d 191 (1984), *quoted with approval* in *Great Northern Nekoosa*, 925 F.2d at 525. Because any award has the potential for "precedential value" in future cases, the Court owes a duty to the principled development of the law to exercise careful judgment in reviewing agreed-upon fees. *Great Northern Nekoosa*, 925 F.2d at 526.

As noted above, a fee award of $39 million amounts to 9.3 percent of the estimated value of the settlement to the class. If the actual value is close to the estimate, a fee in the requested amount would be fair and reasonable. If the actual value proves to be far less than the estimate, however, the fairness and reasonableness of the fee would be open to doubt.

There seems to be no good reason to guess, when experience will shortly answer the crucial question. On the other hand, it is not fair to postpone entirely the approval of the fee, as counsel have completed a substantial portion of their work. The solution is to approve the fee requested provisionally, permit its partial payment immediately, but reserve the balance for payment either in full or after any appropriate adjustment in the light of actual experience under the settlement.

---

**5.** It may also be noted that in securities class actions, Congress has required that attorneys' fees "shall not exceed a reasonable percentage of the amount of any damages and prejudgment interest *actually paid* to the class." 15 U.S.C. § 78u–4(6) (1997)(emphasis added).

Accordingly, the Court provisionally approves the payment of attorneys' fees in the sum of $39 million based on the estimated value of the settlement and authorizes the immediate payment of $22.5 million of that amount. This payment amounts to 150 percent of the approximate lodestar of $15 million. The balance of $16.5 million shall be held by John Hancock in escrow, in such investments as class counsel may reasonably direct, pending further order. The Court also approves the immediate payment of costs in the sum of $750,000.

The Court will retain jurisdiction of this matter, and at any time after one year from the date of this Order, class counsel may move, with notice to those class members who filed formal objections to the fee award, for the disbursement of all or part of the balance of the fund.

Staging the fee award in this manner will serve a number of purposes. First, it will help ensure that the fee award is proportionate to the actual value created for the class. Second, it will reinforce class counsel's continuing incentive to monitor the ADR process vigorously, an obligation counsel have assumed under the agreement. Finally, staging the fee award to permit a second look will emphasize the principle that in class actions the interests of counsel who negotiate settlements should align with the interests of the class.

### Conclusion

For the foregoing reasons, the fees are awarded to class counsel in the manner described above.

It is SO ORDERED.