Vicki STOKES, Jean Greendyke,
Plaintiffs,

v.

SAGA INTERNATIONAL HOLIDAYS, LTD., Saga International Holidays Travel, Inc., Saga Holidays Ltd., Defendants.

No. CIV.A. 02–11075–RBC.[1]

United States District Court, D. Massachusetts.

July 18, 2005.

---

**1.** With the parties' consent, this case was referred and reassigned to the undersigned for all purposes, including trial and the entry of judgment, pursuant to 28 U.S.C. § 636(c).

Beth L. Appelbaum, Paul J. Hall, Minh Hoang, Eric K. Larson, Timothy J. Lucey, Nixon Peabody LLP, San Francisco, CA, Mark H. Burak, Morse, Barnes–Brown & Pendleton, P.C., Waltham, MA, Stacey L. DiJon, Nixon Peabody LLP (BOS), Boston, MA, Donna Y. Porter, David S. Rosenthal, Nixon Peabody LLP (BOS), Boston, MA, Robert M. Shea, Morse, Barnes–Brown & Pendleton, P.C., Waltham, MA, for Saga Holidays Ltd., Saga International Holidays Travel, Inc., Saga International Holidays, Ltd., Defendants.

Dale A. Coggins, John P. Connelly, Robert T. Gill, Peabody & Arnold LLP, Boston, MA, John J. Dacey, Dacey & Sitkin, San Francisco, CA, for Vicki Stokes, Diane Fabiano, Jean Greendyke, Julia Johannesson, Sara Joyce Lowe, Plaintiffs.

James M. Sitkin, Dacey & Sitkin, San Francisco, CA, for Jean Greendyke, Vicki Stokes, Diane Fabiano, Julia Johannesson, Sara Joyce Lowe, Plaintiffs.

## *MEMORANDUM AND ORDER ON PLAINTIFFS' UNOPPOSED MOTION FOR AWARD TO PLAINTIFFS' ATTORNEYS OF REASONABLE ATTORNEYS FEES AND COSTS AND AWARD TO CLASS REPRESENTATIVES OF REASONABLE COMPENSATION FOR SERVICES TO TO SETTLEMENT CLASSES (# 92)*

COLLINGS, United States Magistrate Judge.

### I. Introduction

On December 17, 2004, the parties, plaintiffs Vicki Stokes and Jean Greendyke (hereinafter collectively "the Representative Plaintiffs") and defendants Saga International Holidays, Ltd., Saga International Holidays Travel, Inc., and Saga Holidays Ltd. (hereinafter collectively "Saga"), filed a Stipulation Re: Settlement Agreement and Release in this class action litigation. The Stipulation provided, *inter alia*, that the plaintiffs would apply for an award of attorneys' fees and costs in an amount not to exceed $350,000 and compensation for the Representative Plaintiffs in an amount not to exceed a total of $15,000. The defendants agreed that they would not oppose that application. On January 8, 2005,

the Court granted preliminary approval of the class action settlement.

On or about February 16, 2005, an Unopposed Motion For Award To Plaintiffs' Attorneys Of Reasonable Attorneys Fees And Costs And Award To Class Representatives Of Reasonable Compensation For Services To Settlement Classes (# 92) was filed. A little more than a month thereafter on March 22, 2005, an Order granting final approval of the settlement of this class action was entered with the issues of attorneys' fees and representative plaintiff compensation remaining sub judice. At this time those final fee and compensation issues stand poised for resolution.

## II. Discussion

■ Rule 23(e) of the Federal Rules of Civil Procedure mandates that the court approve any dismissal or compromise of class actions. This rule includes the review of the attorneys' fees, even those that have been pre-negotiated. *See Weinberger v. Great Northern Nekoosa Corp.*, 925 F.2d 518, 522 (1 Cir., 1991). Courts have the "equitable jurisdiction to review and pass upon the reasonableness of a fee application submitted for judicial approval as part of a class action settlement." *Great Northern Nekoosa Corp.*, 925 F.2d at 523.

■ Clear sailing clauses are agreements between parties to waive objections to attorneys' fees that do not exceed a negotiated limit. *See Great Northern Nekoosa Corp.*, 925 F.2d at 520; *Duhaime v. John Hancock Mut. Life Ins. Co.*, 989 F.Supp. 375, 376 (D.Mass., 1997). In *Great Northern Nekoosa Corp.*, 925 F.2d at 524, the agreement was that the request for attorneys' fees would not exceed $2,000,000 while in *Duhaime*, 989 F.Supp. at 376, the defendants agreed not to oppose a fee application of more then $39,000,000 plus $750,000 in expenses. In this case the agreement between the parties was that the defendants would not

oppose attorneys' fees that did not exceed $350,000. This provision is of the same nature as the agreement between the parties in *Great Northern Nekoosa Corp.* and *Duhaime*, to wit, a clear sailing clause.

■ Arm's length negotiations of attorneys' fees that would not diminish the common fund available to the members of the class action do not have the potential for the evils of extortion and collusion. *Great Northern Nekoosa Corp.*, 925 F.2d at 524–25; *Malchman v. Davis*, 761 F.2d 893, 904–05 (2 Cir., 1985), *cert. denied sub nom. Mountain Plains Congress of Senior Organizations v. Malchman*, 475 U.S. 1143, 106 S.Ct. 1798, 90 L.Ed.2d 343 (1986); *Duhaime*, 989 F.Supp. at 379. Nevertheless, a fee award that does not come from a common fund still requires review by the court. *Duhaime*, 989 F.Supp. at 376. In *Duhaime*, the dangers of a clear sailing agreement were not present when the attorneys' fees were negotiated after the issues of class action were resolved. *Duhaime*, 989 F.Supp. at 379. The parties in *Malchman* submitted affidavits to the court to demonstrate that attorneys' fees were discussed only after all of the merits of the settlement had been decided except for "certain minutiae." *Malchman*, 761 F.2d at 904. Such agreements allay suspicions when made after the other substantive issues of the settlement have been decided. *Malchman*, 761 F.2d at 905.

■ However, attorneys' fees may be denied by a court even when there is a clear sailing agreement between the parties for the settlement of a class action. *BTZ, Inc. v. Great Northern Nekoosa Corp.*, 47 F.3d 463, 466–67 (1 Cir., 1995). When a fee application is submitted along with the termination of a class action, courts should examine the reasonableness of the requested attorneys' fees. *See Int'l Precious Metals Corp. v. Waters*, 530 U.S.

1223, 1224–25, 120 S.Ct. 2237, 147 L.Ed.2d 265 (2000); *Staton v. Boeing Co.*, 327 F.3d 938, 963 (9 Cir., 2003)(stating that to "avoid abdicating its responsibility to review the agreement for the protection of the class, a district court must carefully assess the reasonableness of a fee amount spelled out in a class action settlement agreement"); *Great Northern Nekoosa Corp.*, 925 F.2d at 522 (a court "should ordinarily determine the reasonableness of the fees, notwithstanding that the source of payment does not directly impair the class recovery.") Clear sailing agreements impact upon judicial supervision in examining fees; "[s]uch a clause by its nature deprives the court of the advantages of the adversary process." *Great Northern Nekoosa Corp.*, 925 F.2d at 525; *BTZ, Inc.*, 47 F.3d at 467. "The absence of adversariness makes heightened judicial oversight of both of these fee agreements highly desirable, especially since the very existence of a clear sailing agreement increases the likelihood that something of value will have been bargained away by the counsel." *Great Northern Nekoosa*, 925 F.2d at 525.

■ Clear sailing clauses can breed circumstances ripe for conflicts of interest between the members of the plaintiff class and counsel for the plaintiffs. *Great Northern Nekoosa Corp.*, 925 F.2d at 524 (discussing *Malchman*, 761 F.2d at 906–08). There is the possibility that the plaintiffs' "lawyers might urge a class settlement at a low figure or on less-then-optimal basis in exchange for red carpet treatment on fees." *Duhaime*, 989 F.Supp. at 377 (quoting *Great Northern Nekoosa Corp.*, 925 F.2d at 524). Judicial scrutiny is warranted because the defendant is only interested in getting rid of the claim, and the allocation of the funds between the attorney and the members of the class action is of no concern to the defendant. *See Boeing Corp.*, 327 F.3d at 963; *Duhaime*, 989 F.Supp. at 377 (discussing *Prandini v. Nat'l Tea Co.*, 557 F.2d 1015, 1020 (3d Cir.1977)).

The agreement with respect to attorneys' fees in the instant case was submitted along with settlement of the substantive issues between the parties. Consequently, the danger of a conflict of interest as discussed in the *Great Northern Nekoosa Corp.* case is created. The Court must be cognizant of this potential when deciding whether to allow the clear sailing agreement to determine the award of attorneys' fees.

■ Further, attorneys' fees should be reviewed in light of the "precedential value" set by the award for future class action settlements. *Duhaime*, 989 F.Supp. at 379; *Great Northern Nekoosa*, 925 F.2d at 526.

> When ... a court is compelled by the nature of the case or statutory mandate to award attorney fees to a party, the determination of such award is not only a matter of public record, it becomes part of the great body of our law. A court would be shirking its responsibility to render a principled decision were it to accept without scrutiny and close examination the fees agreed upon by client and counsel.

*Codex Corp. v. Milgo Electronic Corp.*, 717 F.2d 622, 632 (1 Cir., 1983), *cert. denied sub nom. Milgo Electronic Corp. v. Codex Corp.*, 466 U.S. 931, 104 S.Ct. 1719, 80 L.Ed.2d 191 (1984) (holding that there was no abuse of discretion by the district court for refusing to adjust an award of attorney's fees when the attorney's submissions of expenses were inadequate).

As the plaintiffs have repeatedly stated in their submissions in this case, the issue of travel agents receiving overtime is a novel idea. *See* Memorandum of Points # 93 at 3 n. 1, 19 ("Plaintiff's Attorneys ... litigated over a more than three year period a case that presented novel and

difficult questions of fact and law . . . ."); # 93 at 8 ("It should be noted that, to the best of the Plaintiffs' knowledge, there are no reported U.S. court cases that rule on the merits of the applicability of the administrative or professional exemptions within the exact fact pattern of tour directors within the tour industry."). Thus the precedential value of decisions made in this case is significant.

Clear sailing agreements can also engender "potential public misunderstandings" with regard to the class counsel. *See In re Agent Orange Prod. Liab. Litig.*, 818 F.2d 216, 225 (2 Cir.), *cert. denied sub nom. Newton B. Schwartz, P.C. v. Dean*, 484 U.S. 926, 108 S.Ct. 289, 98 L.Ed.2d 249 (1987)(discussing concern for public misunderstanding when attorneys' fees and the class action issues were negotiated at the same time in a class action suit comprised of injured veterans when the settlement did not provide substantial compensation to the members of the class action); *In re GMC Pick–Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d at 768, 820 (3 Cir.), *cert. denied sub nom. General Motors Corp. v. French*, 516 U.S. 824, 116 S.Ct. 88, 133 L.Ed.2d 45 (1995)(holding that review of fees was necessary in all class action settlements to prevent both abuse of appearance and public misunderstanding). The Court must be aware that the simultaneous negotiation of the class action issues and the attorneys' fees can create the possibility of public misunderstanding.

Taking guidance from the case law discussed, the Court shall examine the request for attorneys' fees to ensure that the fees are reasonable.

A. *The Applicable Law Following a 28 U.S.C. § 1404(a) Transfer*

■ This action was transferred from the United States District Court, Northern District of California, on the defendants' motion pursuant to 28 U.S.C. § 1404(a). A transferee court applies its own interpretation of federal law, not the interpretation of the transferor court. *See Newton v. Thomason*, 22 F.3d 1455, 1459–60 (9th Cir. 1994) (holding that "when reviewing federal claims, a transferee court in this circuit is bound only by our circuits precedent"). The Ninth Circuit concurred with the D.C. Circuit position that "binding precedent for all [courts] is set only by the Supreme Court, and for the district courts within a circuit, only by the court of appeals for that circuit [in the absence of Supreme Court authority]." *Newton*, 22 F.3d at 1459–60 (quoting *In re Korean Air Lines Disaster*, 829 F.2d 1171, 1176 (D.C.Cir., 1987)). The District Court of Massachusetts has followed this precedent. *See Montana v. Abbot Labs.*, 266 F.Supp.2d 250, 260 (D.Mass., 2003)("[T]his Court is bound by First Circuit precedent in adjudicating transferred multi-district cases".) *See, e.g., In re TMJ Implants Prods. Liab. Litig.*, 97 F.3d 1050, 1055 (8th Cir.,1996) ("When analyzing questions of federal law, the transferee court should apply the law of the circuit in which it is located."); *Newton v. Thomason*, 22 F.3d 1455, 1460 (9th Cir.1994) (same); *Menowitz v. Brown*, 991 F.2d 36, 40–41 (2nd Cir.1993) (same); *In re Korean Air Lines Disaster of September 1, 1983*, 829 F.2d 1171, 1176 (D.C.Cir.1987) (same).

■ Following transfer a state claim is governed by the law of the transferor court when the jurisdiction in the original forum was proper. *See Van Dusen v. Barrack*, 376 U.S. 612, 639, 84 S.Ct. 805, 11 L.Ed.2d 945 (1964)(superseded by statute on other grounds in *Ross v. Co. Outward Bound Sch. Inc.*, 822 F.2d 1524 (10 Cir., 1987)). If the original forum did not have jurisdiction, the law of the transferee court applies. *See Van Dusen*, 376 U.S. at 639, 84 S.Ct. 805; *Muldoon v. Tropitone Furniture Co.*, 1 F.3d 964, 966–67 (9 Cir., 1993); *Nelson v. Int'l Paint Co.*, 716 F.2d

640, 643 (9 Cir., 1983); *Bahia Las Minas Corp. v. Gen. Elec. Co.*, 267 F.Supp.2d 154, 156 (D.P.R., 2003).

Consequent to the transfer, the question arises as to whether to apply the lodestar test of the Ninth Circuit, First Circuit, or California. However, the various versions of the lodestar in each jurisdiction are comparable, with no substantive differences. Due to the similarity of the tests, it need not be decided what law applies.

### B. *Award of Attorneys' Fees*

██ The lodestar is used to determine reasonable attorneys' fees to be awarded. The lodestar method calculates the award of reasonable hours spent litigating the matter multiplied by a reasonable hourly rate. *See Blum v. Stenson*, 465 U.S. 886, 895, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984); *Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983); *Sorenson v. Mink*, 239 F.3d 1140, 1145 (9 Cir., 2001); *Connolly v. Harrelson*, 33 F.Supp.2d 92, 95 (D.Mass.), *aff'd*, 201 F.3d 426, 1999 WL 699906 (1 Cir.1999).

██ A reasonable hourly rate is "calculated according to the prevailing market rates in the relevant community." *Blum*, 465 U.S. at 895, 104 S.Ct. 1541.

> [T]he burden is on the fee applicant to produce satisfactory evidence—in addition to the attorney's own affidavits— that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation. A rate determined in this way is normally deemed to be reasonable, and is referred to—for convenience—as the prevailing market rate.

*Blum*, 465 U.S. at 896 n. 11, 104 S.Ct. 1541.

██ The "'fair market rate' is the 'reasonable hourly rate of compensation prevailing in the relevant community for similar services by lawyers of reasonably comparable skill, experience, and reputation.'" *Connolly*, 33 F.Supp.2d at 95 (quoting *McLaughlin v. Boston Sch. Comm.*, 976 F.Supp. 53, 60 (D.Mass., 1997)). Although the plaintiffs have not submitted affidavits of other attorneys to demonstrate that the rates requested are reasonable, examining prior cases is helpful. *See Andrade v. Jamestown Hous. Auth.*, 82 F.3d 1179, 1190 (1 Cir., 1996)("[T]he court is entitled to rely upon its own knowledge of attorney's fees in its surrounding area in arriving at a reasonable fee . . . .")

██ The relevant community for determining hourly rates is the community where the court sits. *See Alfonso v. Aufiero*, 66 F.Supp.2d 183, 197 (D.Mass., 1999)(discussing *Nat'l Wildlife Fed'n v. Hanson*, 859 F.2d 313, 317 (4 Cir.1988)). There is a presumption that Boston rates will apply in federal cases in the Boston court. *See Alfonso*, 66 F.Supp.2d at 197. Boston is where the settlement occurred, so Boston is the "relevant community" against which the fees will be examined.

There are several attorneys and paralegals involved in this litigation, all requesting different hourly rates. Again, the defendants have not objected to the hourly rates requested by the attorneys for the plaintiffs or the hours documented. The attorneys have submitted detailed contemporaneous time records of their service to the class action.

John P. Connelly, Esquire, is a partner in the Boston firm of Peabody & Arnold LLP. (Affidavit of John P. Connelly # 95 ¶ 1) Connelly graduated from Boston College Law School in 1985 and was admitted to the Massachusetts Bar later that year in December. (# 95 ¶ 2) He was an associate at Hutchinson & Wheeler in Boston from 1985 to 1991, moved to Peabody & Arnold LLP where he was an associate from 1992 to 1994 and then made a partner in 1995.

(# 95 ¶ 2) Connelly has been a litigator in both federal and state courts throughout his legal career handling, among other things, several wage and overtime employee matters. (# 95 ¶ 3)

Robert Gill, Esquire, is another partner at Peabody & Arnold LLP. (# 95 ¶ 5) Gill, too, is a litigator and was admitted to the bar in 1973. (# 95 ¶ 5) Terri Pastori, Esquire, graduated from law school in 1991, was admitted to the Massachusetts Bar in 1997 and is an associate at Peabody & Arnold LLP with experience in litigation. (# 95 ¶ 5)

John J. Dacey, Esquire, is a partner in Dacey & Sitkin of San Francisco, California. (Declaration of John J. Dacey # 94 ¶¶ 1, 2) Dacey graduated from Hastings College of Law in 1972 and was admitted to the California bar the same year. (# 94 ¶ 2) He has over thirty years of business and commercial litigation experience and has represented several class actions including wage and overtime pay matters. (# 94 ¶ 2) James M. Sitkin, Esquire, is also a partner in Dacey & Sitkin. (# 94 ¶ 2) A 1982 graduate of Hastings College of Law and member of the California bar since 1983, Sitkin has over twenty years of experience as a litigator. (# 94 ¶ 2)

Lawyers' fees of over $300/hr have been approved for trial lawyers in Boston. *See Connolly,* 33 F.Supp.2d at 95–6; *Guckenberger v. Boston Univ.,* 8 F.Supp.2d 91, 105 (D.Mass., 1998). A fee of $325 per hour was deemed reasonable for a senior litigation partner who had graduated from law school in 1984. *See Arthur D. Little Int'l, Inc. v. Dooyang Corp.,* 995 F.Supp. 217, 224 n. 1 (D.Mass.1996). Rates of $345/hr and $320/hr have been sanctioned for senior litigators in a large Boston firm. *See Guckenberger,* 8 F.Supp.2d at 105 (discussing *Visiting Nurse Ass'n v. Bullen,* Civil Action No. 94–10123–NG 1995 U.S. Dist. LEXIS 21935, at *15 (D.Mass., Oct. 2, 1995)). In another case a partner at

Wilmer, Cutler, Pickering, Hale & Dorr with twenty-four years of experience testified to charging $595/hr. *See McDonough v. Quincy,* 353 F.Supp.2d 179, 186 n. 6 (D.Mass., 2005) (discussing *Tiverton Power Assoc. Ltd. P'ship v. The Shaw Group, Inc.,* Civil Action No. 01–10914–WGY (D.Mass., Jan. 11, 2005)).

▬ Connelly requests an hourly fee of $395/hr. (# 95 ¶ 9) Gill requests an hourly rate of $445/hr. (# 95 ¶ 9) Dacey requests an hourly fee of $375/hr. (# 94 ¶ 10) Sitkin requests an hourly rate of $330/hr. (# 94 ¶ 10) These hourly rates are reasonable in consideration of past cases that have permitted similar fees for attorneys with similar experience. The fees requested by the attorneys are comparable to, and within the range of, the prevailing market rate.

Pastori requests an hourly rate of $260/hr. (# 95 ¶ 9) Such an hourly rate is high for someone with Pastori's years of experience. "[R]ates for 'partners in trial firms with experience in civil rights cases [to be] between $200 to $275 per hour'...." *Connolly,* 33 F.Supp.2d at 95–96 ($200/hr for an experienced attorney with twenty-five years of practice in Massachusetts was "on the thrifty side"). A more conservative fee has been awarded to attorneys with Pastori's experience. *See McDonough,* 353 F.Supp.2d at 188 ($200/hr was a reasonable rate for an attorney with fifteen years of experience including eleven years of relevant experience); *LaPlante v. Pepe,* 307 F.Supp.2d 219, 224 (D.Mass., 2004) (senior and mid-level litigation attorneys with relevant experience with were respectively awarded hourly rates of $275 and $150); *Norris v. Murphy,* 287 F.Supp.2d 111, 118 (D.Mass., 2003)(an hourly rate of $265 for lead counsel was appropriate); *Martinez v. Hodgson,* 265 F.Supp.2d 135, 143–44 (D.Mass., 2003) ($120/hr was reasonable for an associate that did not provide any evidence of her

year of graduation, what school she attended, or qualifications); *Alfonso*, 66 F.Supp.2d at 197($250/hr was reasonable for an civil rights attorney with 20 years of experience in civil rights litigation). Considering Pastori's background and experience, her hourly· rate will be reduced to $200/hr.

■ The paralegals have requested an hourly rate of $160/hr. (# 95 ¶ 9) Historically paralegal fees are approved at much lower rates. *See McDonough*, 353 F.Supp.2d at 188–89 (hourly rate of $50/hr for paralegal); *Rolland v.. Romney*, 292 F.Supp.2d 268, 275 (D.Mass., 2003) (allowing a paralegal fee of $75/hr); *Norris*, 287 F.Supp.2d at 118 ($60/hr. reasonable for a paralegal); *Yankee Candle Co. v̇. Bridgewater Candle Co.*, 140 F.Supp.2d 111, 126 (D.Mass.), *aff'd*, 259 F.3d 25 (1 Cir., 2001)($80/hr is appropriate for mid-level paralegals, but $140 was too high); *Guckenberger*, 8 F.Supp.2d at 107 ($60/hr reasonable for a paralegal). In light of this precedent and in the absence of any description of the paralegals' education or experience, their hourly rates will be reduced to $60/hr.

■ With the hourly rates set,˙the issue to be addressed is that of reasonable hours. Only the hours that were reasonably expended in litigation of the claim may be included in a request for attorneys' fees. *See Hensley*, .461 U.S. at 433, 103 S.Ct. 1933; *Sorenson*, 239 F.3d at 1145; *Connolly*, 33 F.Supp.2d at 96. "[T]he judge should begin his inquiry with the amount of time documented by the plaintiff's attorney." *Connolly*, 33 F.Supp.2d at 96. The Court must decide if any of the hours documented by the attorneys were unreasonable or̓ unnecessary. *Connolly*, 33 F.Supp.2d at 96. Hours that are duplicative will be stricken. *Earthquake Sound Corp. v. Bumper Indus.*, 352 F.3d 1210, 1219 (9 Cir., 2003)("It is appropriate for a district court to reduce duplicative fees

when awarding attorney's fees."); *see also Rodriguez–Hernandez v. Miranda–Velez*, 132 F.3d 848, 858 (1 Cir., 1998).

Attorney Connelly has submitted a record of the hours expended by those from Peabody & Arnold LLP in the litigation. (# 95, Exh A) Although there are no objections to the hours, it is still ˙incumbent upon the Court to review the hours to ensure they are reasonable.

■ Connelly spent 6 hours reviewing the file for the litigation against Saga. (# 95, Exh. A at 1) Time spent reviewing a case is not recoverable because it "cannot be considered 'reasonable....'" *Grendel's Den, Inc. v. Larkin*, 749 F.2d 945, 958 (1 Cir., 1984). The hours spent reviewing the case file will be deducted from Connelly's time.

Both firms researched and did other work pertaining to the discovery of absent class members. Connelly and others of Peabody & Arnold LLP request an award of 17 hours for this work (9 hours for Connelly, 7.7 for Pastori and 0.3 hours for a paralegal), while Dacey & Sitkin claim to have expended about 40 hours (10 hours for Dacey and 30 hours for Sitkin). The amount of time, in toto, appears excessive and likely some is redundant. In these circumstances the time will be reduced to 7 hours for Connelly, 5.7 hours for Pastori, 8 hours for Dacey, and 25 hours for Sitkin.

There are a few miscellaneous, minor items that require reductions. There are two instances where Connelly notes a telephone call to Sitkin, but there is no description of the purpose or reason for the call. (# 95, Exh. A at 5) The party requesting attorneys' fees has the duty to provide adequate records to the court, and a record of a telephone call without describing the reason for the call is insufficient. *See Hensley*, 461 U.S. at 433–4, 103 S.Ct. 1933 ("where the documentation of hours is in-

adequate, the district court may reduce the award accordingly.") A reduction of 0.5 hours will be made in Connelly's time. In addition, Fleming has billed 0.4 hours to get the online docket from the court and this will be reduced to 0.1 hours.

In the First Circuit, a distinction must be made between core work and non-core work when awarding attorneys' fees. *See Parker v. Town of Swansea*, 310 F.Supp.2d 376, 391 (D.Mass., 2004); *Alfonso*, 66 F.Supp.2d at 196; *Connolly*, 33 F.Supp.2d at 96. The Supreme Court and the district court in California make a similar distinction with secretarial or clerical work. *See Missouri v. Jenkins*, 491 U.S. 274, 288, 109 S.Ct. 2463, 105 L.Ed.2d 229 (1989); *Noyes v. Grossmont Union High Sch. Dist.*, 331 F.Supp.2d 1233, 1250 (S.D.Cal., 2004); *Mogck v. Unum Life Ins. Co. of Am.*, 289 F.Supp.2d 1181, 1193 (S.D.Cal., 2003). A lower hourly rate is awarded to an lawyer for performing this sort of work.

Regardless of terms used, the purpose of this distinction is to prevent attorneys from earning their regular lawyers' fees for work that could be performed by a less skilled employee. There will not be any deductions for core versus non-core or secretarial time in this instance. All of the tasks listed in the records were properly delegated to the appropriate person.

Dacey requests an award of $375/hr for 314 hours. After the deduction of a total of 2 hours and no change to the hourly rate, Dacey's attorneys' fees total $117,000.

Sitkin's request for an hourly rate of $330 is also permitted, but 5 hours are to be deducted from his time. Sitkin's total award for attorneys' fees is $165,858.

Connelly's requested time will be reduced by 8.5 hours, but his hourly rate of $395 will not be altered. The award for Connelly is $41,099.75.

Pastori's hourly rate is decreased from $260 to $200, and her hours requested are reduced to 18.6. Pastori's fee award is $3,720.

Paralegal Mende's hourly rate is reduced from $160 to $60. There are no reductions in the hours requested. The award for her paralegal services is $30. Paralegal Fleming's hourly rate is similarly reduced to $60. Her hours are reduced to a total of 3.4 hours. The award for Fleming is $204.

The award of attorneys' fees to Gill is as requested, $222.50, given that both the hours documented and hourly rates are reasonable and no deductions have been taken.

The costs of the litigation have been detailed. These expenses and disbursements are well within the bounds of reasonable and so shall be awarded without deduction.

At the Court's request, the plaintiffs' attorneys have filed supplemental affidavits with respect to attorneys' fees and costs incurred from February 15, 2005 through June 30, 2005. During this time period, Dacey performed 12.4 hours of work on this case which, at $375/hr, totals $4,650. Sitkin performed 11.7 hours of work which, at $330/hr., totals $3,861. Connelly performed an additional 6.55 hours which, at $395/hr., amounts to $2,587.25. Paralegal Fleming worked .6 hours at $60/hr. for a total of $36. All of the time expended was reasonable and compensable. In addition, further costs were incurred in the total amount of $291.59. These additional attorneys' fees and costs push the total compensable award to date to $350,382.77 which is more than the amount to which the parties agreed in reaching the settlement of this case. In these circumstances, plaintiffs' attorneys shall be awarded the maximum amount allowed in the Stipulation for at-

torneys' fees and costs, that being $350,000.

Lastly, a review of the attorney time records reveals the extensive amount of time devoted to this litigation by the Class Representatives. As the settlement reflects, the class members greatly benefitted from Stokes' and Greendyke's actions on their behalf. The sums requested as payment for their services on behalf of the class are eminently reasonable and so shall be awarded in their entirety.

### III. Conclusion and Order

For all the reasons stated, it is ORDERED that the Plaintiffs' Unopposed Motion For Award To Plaintiffs' Attorneys Of Reasonable Attorneys (sic) Fees And Costs And Award To Class Representatives Of Reasonable Compensation For Services To Settlement Classes (# 92) be, and the same hereby is ALLOWED to the extent that (1) plaintiffs are AWARDED attorneys' fees and costs in the total amount of $350,000 (three hundred fifty thousand dollars), plaintiff Stokes is AWARDED the sum of $10,000 (ten thousand dollars) for her services as a class representative and plaintiff Greendyke is AWARDED the sum of $5,000 (five thousand dollars) for her services as a class representative, sums which are unopposed by the defendants.