**Wood NEWTON, Plaintiff–Appellant,**

v.

**Harry THOMASON; Linda Bloodworth–Thomason; Burt Reynolds; Mozark Productions, Inc.; Evening Shade; MTM, Inc.; CBS, Inc., Defendants–Appellees.**

**Wood NEWTON, Plaintiff–Appellee,**

v.

**Harry THOMASON; Linda Bloodworth–Thomason; Burt Reynolds; Mozark Productions, Inc.; Evening Shade, a business entity; MTM, Inc., a California Corporation; CBS, Inc., a New York Corporation, Defendants–Appellants.**

Nos. 93–55002, 93–55376 and 93–55379.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted March 9, 1994.

Decided April 28, 1994.

Joseph M. Gabriel, Langberg, Leslie, Mann & Gabriel, Los Angeles, CA, for appellants and cross-appellees.

Beth A. Finley and Michael Plonsker, Lavely & Singer, Los Angeles, CA, for appellees and cross-appellants.

Before: PREGERSON, O'SCANNLAIN, and FERNANDEZ, Circuit Judges.

Opinion by Judge PREGERSON.

PREGERSON, Circuit Judge:

Wood Newton ("Newton") appeals the district court's summary judgment in favor of television producers Harry Thomason and Linda–Bloodworth Thomason, Burt Reynolds, and Mozark Productions, Inc. (collectively "Appellees"), in Newton's misappropriation and unfair competition action. Newton alleges that the Appellees appropriated his name for a character in the television show "Evening Shade" in violation of the common law right of publicity, various state statutes, and the Lanham Act, 15 U.S.C. § 1125(a). Newton and his attorney Michael Childress ("Childress") together appeal the award of

sanctions against Childress. Appellees cross-appeal the denial of their request for attorneys' fees. We have jurisdiction over both the appeal and the cross-appeal under 28 U.S.C. § 1291. On the appeal, we affirm in part and reverse in part. On the cross-appeal, we reverse and remand in part.

## BACKGROUND

Appellant Newton is a country music songwriter and performer. In the country/western music industry, he is recognized by the name "Wood Newton." The main character in the television series "Evening Shade" [hereinafter the TV Series], is also named "Wood Newton." Prior to the television show, which started airing in September 1990, Newton was the only person with that name in the entertainment field.

Newton filed a complaint in the Northern District of Illinois, alleging that Appellees misappropriated his name and likeness and engaged in unfair competition in violation of state and federal law. The Illinois court transferred the case to the Central District of California, under 28 U.S.C. § 1404(a).[1] Appellees moved for summary judgment[2] on the following grounds: (1) Newton consented to use of his name; (2) Appellees did not "pirate" Newton's name and identity for commercial gain; and (3) There was no likelihood of confusion between Newton and the TV Series character.

On the issue of consent, Appellees presented evidence that Newton consented in writing and by his conduct.[3] Their evidence showed that by May or June 1990, Newton knew that Appellees planned to use Wood Newton as one of the TV Series' character names because his sister sent him a newspaper article about the TV Series. On July 18, 1990, Newton wrote, in a letter to Harry Thomason ("Thomason") and Linda Bloodworth–Thomason ("Bloodworth"), "I've been reading about your new show.... I want

you to know I'm flattered that you are using my name, everyone who I've talked to about it thinks it's exciting and so do I." He went on to explain the origins of his name. Newton admitted that he did not expect Thomason to think he objected to the use of his name after reading this letter. Both before and after the first broadcast in September, Newton spoke with Thomason and sent several more letters without ever objecting to or even mentioning the use of his name; he spoke only about the use of his songs.

In their moving papers, Appellees contended that Newton in fact actively encouraged them to use his name because he hoped to sell them a theme song for the TV Series. Newton wrote the July 18th letter in response to an article explaining that Appellees were looking for a theme song for the TV Series. He enclosed tapes of his music with the letter, stating "I would love to have the chance to write some music or songs for the show...." Newton admitted that he intentionally failed to disclose his objections to the use of his name because he wanted to sell a song and hoped to get special consideration. Appellees used two of Newton's songs in the TV Series but rejected his proposed theme song. After Newton learned, in December 1990, that Appellees had decided not to buy his submitted theme song, he for the first time investigated his legal rights and objected to the use of his name.

To oppose Appellees' summary judgment motion, Newton submitted a declaration denying that the April 26, 1990 conversation took place and stating that, although he never objected, he also never consented to the use of his name. He explained that he did not object in part because he had mixed feelings about the idea: he wanted to see the actual use of his name and the compensation Appellees would provide him. His other alleged reasons for not objecting were that he did not even know until June or July 1990

---

1. "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a).

2. CBS, Inc. and MTM, Inc. joined in Appellees' summary judgment motion.

3. Appellees also presented evidence that Newton spoke with Harry Thomason on April 26, 1990, and enthusiastically agreed to the use of his name. However, for purposes of their summary judgment motion, Appellees conceded that oral consent was disputed.

that Appellees were going to use his name in the TV Series, and did not know until December that he had a legal right to object. He also stated that he never intended the July 18, 1990 letter to constitute consent or authorization to use his name. As evidence that Appellees never believed they had received consent, Newton presented a letter from MTM, Inc., dated October 2, 1990, which stated that "we should get a release from Wood Newton to use his name...." CBS drafted an agreement that granted it the right to use Newton's name, but Newton refused to sign it.

Second, on the issue of commercial exploitation of Newton's name and identity, Appellees presented evidence that they never used the name "Wood Newton" to advertise or promote the TV Series or to sell any products or services. In newspaper announcements, for example, they merely mentioned the name "Wood Newton" as Burt Reynolds's character name.

Third, on the issue of likelihood of confusion, Appellees and Newton each described the similarities and differences between Newton and the TV Series character. Newton is a forty-five year old country music songwriter and performer. He grew up in a small Arkansas town and played high school football for a team coached by Thomason. His deceased father was named Obb Newton; Obb owned a local hardware store. Newton has been married for twenty years and has no children. He once moved from his hometown to a big city and currently lives in a different small town. The fictional Wood Newton character is a high school football coach and former pro football star who is married to a prominent attorney and has three children. He lives in a small Southern town that is modeled after Newton's (and Thomason's) hometown. His deceased father has the same name and occupation as did Newton's deceased father. At the root of his character are a dry sarcastic wit, a passion for the song "Blueberry Hill," and a lack of talent on the football team he coaches. In his declaration, Newton stated that people who he met for the first time asked him whether he took his name from Burt Reynolds's character.

Based on the submitted evidence, the district court granted summary judgment in favor of Appellees. The district court also sanctioned Newton's attorney Childress in the amount of $10,000 for filing Newton's complaint in the Illinois district court and denied Appellees' motion for attorneys' fees. Newton and Childress appeal and Appellees cross-appeal.

## ANALYSIS

### 1. Newton's Appeal of Summary Judgment

We review de novo the district court's grant of summary judgment. *Smith v. Noonan*, 992 F.2d 987, 989 (9th Cir.1993). Viewing the evidence in the light most favorable to Newton, as the nonmoving party, we must determine whether there are any genuine issues of material fact and whether the district court correctly applied the relevant substantive law. *Botefur v. City of Eagle Point*, 7 F.3d 152, 154 (9th Cir.1993).

#### A. Applicable State and Federal Law

Because the case was transferred under 28 U.S.C. § 1404(a) from the Northern District of Illinois, we apply the choice-of-law rules of Illinois. *Muldoon v. Tropitone Furniture Co.*, 1 F.3d 964, 965 (9th Cir.1993) (citing *Van Dusen v. Barrack*, 376 U.S. 612, 642, 84 S.Ct. 805, 822, 11 L.Ed.2d 945 (1964), for the requirement that the transferee court follow the choice of law rules of the transferor court).

Illinois choice of law requires that we apply California law to Newton's state tort law right of publicity and unfair competition claims. Illinois uses the "most significant contacts" test to determine the applicable law in a tort case. *Muldoon*, 1 F.3d at 966 (citing *Ingersoll v. Klein*, 46 Ill.2d 42, 262 N.E.2d 593, 596 (1970)). This test balances four factors: (1) the place where the injury occurred; (2) the place where the conduct occurred; (3) the parties' domicile, nationality, place of incorporation and place of business; and (4) the place where the parties' relationship is centered. *Anabaldi v. Sunbeam Corp.*, 651 F.Supp. 1343, 1344 (N.D.Ill. 1987) (quoting *Ingersoll*, 262 N.E.2d at 596).

In this case, the injury (broadcasting and advertising the TV Series with Newton's name) occurred nationally. (Answer, p. 4). The conduct by Appellees (making the TV Series) occurred in California. Newton is domiciled in Tennessee, Thomason and Bloodworth are domiciled in California, and Burt Reynolds is domiciled in Florida. Among the corporate defendants, Mozark Productions, Inc. and MTM Enterprises, Inc. are California corporations, and CBS, Inc. is a New York corporation. The parties' relationship was centered in California: Newton communicated with Appellees by letters and phone calls to California, making California the place "where their spheres of activity intersected." *Anabaldi,* 651 F.Supp. at 1345. Based on this test, the Illinois district court would have been required to apply California law to Newton's state tort claims, and we therefore do the same.

■ As to Newton's federal claim under the Lanham Act, we must decide whether to apply the law of our circuit or the law of the Seventh Circuit. Had the case remained in Illinois, the federal district court there would have been required to apply Seventh Circuit law. But our circuit has not decided whether, in cases involving transfer of a federal claim, the transferee court is required to apply precedent that binds the transferor court. In resolving this issue, we are persuaded by the approach taken by the D.C. Circuit in *In re Korean Air Lines Disaster,* 829 F.2d 1171 (D.C.Cir.1987), *aff'd on other grounds sub nom. Chan v. Korean Air Lines, Ltd.,* 490 U.S. 122, 109 S.Ct. 1676, 104 L.Ed.2d 113 (1989). There, in resolving an identical question under 28 U.S.C. § 1407, the D.C. Circuit correctly pointed out that "[b]inding precedent for all [courts] is set only by the Supreme Court, and for the district courts within a circuit, only by the court of appeals for that circuit [in the absence of Supreme Court authority]." *In re Korean Air Lines Disaster,* 829 F.2d at 1176 (holding that "the law of a transferor forum on a federal question ... does not have stare decisis effect in a transferee forum situated in another circuit"). *Accord Eckstein v. Balcor Film Investors,* 8 F.3d 1121, 1126 (7th Cir.1993) (after a transfer of a federal claim under 28 U.S.C. § 1404(a), transferee court normally should use its own judgment about the meaning of federal law), *cert. denied,* ── U.S. ──, 114 S.Ct. 883, 127 L.Ed.2d 78 (1994). We therefore hold that, when reviewing federal claims, a transferee court in this circuit is bound only by our circuit's precedent. Accordingly, we will apply our law to interpret the Lanham Act claim.

### B. Newton's State Law Misappropriation Claims

■ Newton contends that summary judgment was improper because there are genuine issues of material fact on two elements of his common law right of publicity claim and his statutory appropriation claim. First, he challenges the district court's finding that he undisputedly consented to the use of his name in the TV Series.[4] Second, he argues that a genuine issue of material fact exists on whether Appellees used his name for a commercial purpose.[5]

---

4. Under California common law, a right of publicity claim must include allegations of: " '(1) the defendant's use of the plaintiff's identity; (2) the appropriation of plaintiff's name or likeness to defendant's advantage, commercially or otherwise; (3) lack of consent; and (4) resulting injury.' " *White v. Samsung Electronics America, Inc.,* 971 F.2d 1395, 1397 (9th Cir.1992) (quoting *Eastwood v. Superior Court,* 149 Cal.App.3d 409, 418, 198 Cal.Rptr. 342 (1983)), *cert. denied,* ── U.S. ──, 113 S.Ct. 2443, 124 L.Ed.2d 660. A statutory claim for commercial appropriation also depends on proof of non-consent. Cal.Civil Code § 3344(a) ("Any person who knowingly uses another's name, ... or likeness, in any manner, ... for purposes of advertising or selling ... goods or services, without such person's prior consent ... shall be liable for any damages sustained....").

5. *See supra* note 5. Notably, Cal.Civil Code § 3344(e) modifies § 3344(a) liability for misappropriation: "The use of a name ... or likeness in a commercial medium shall not constitute a use for which consent is required ... solely because the material containing such use is commercially sponsored or contains paid advertising. Rather it shall be a question of fact whether or not the use of the person's name ... or likeness was so directly connected with the commercial sponsorship or with the paid advertising as to constitute a use for which [non-consent is actionable]." The statutory cause of action consists of the same elements as a common law cause of action plus two additional ones. The plaintiff

Viewing the evidence in the light most favorable to Newton, we still disagree with him that consent is a disputed issue. Even though, as Appellees conceded, Newton did not consent orally to the use of his name, we doubt that any fair-minded jury could find non-consent based on Newton's July 18, 1990 letter and subsequent conduct. In the letter, Newton said he was flattered that Appellees were using his name: "Everyone I've talked to thinks it's exciting and so do I." By his own deposition testimony, Newton admitted that he did not expect Thomason to believe he objected to the use of his name. Appellees went ahead with the TV Series and committed themselves to using Newton's name. Newton spoke with Thomason on several occasions in the ensuing months and never even hinted that he objected to the use of his name. He did not object until December 1990, when Appellees rejected his proposed theme song, even though he knew by May or June 1990 that they planned to use his name. Nor does the fact that a lawyer, out of caution, requested a writing from Newton stating, "I consent" mean that Appellees did not believe they had Newton's consent—recall that even Newton did not expect them to believe he objected. Although Newton never uttered the words "I consent," it is obvious that he did consent. There is no material issue of fact regarding consent.

An additional defect in Newton's state law misappropriation claims was his failure to offer sufficient evidence, in response to the motion for summary judgment, to support his general allegation that Appellees used his name for a commercial purpose. *See* Fed. R.Civ.P. 56(e) (party opposing summary judgment must set forth specific facts showing a genuine issue for trial and may not rest upon allegations in pleading). We recognize that California courts have liberally defined commercial purpose to include more than traditional, direct advertising. *E.g., Eastwood v. Superior Court,* 149 Cal.App.3d 409, 421–22, 198 Cal.Rptr. 342 (1983) (Eastwood sufficiently alleged commercial exploitation where the National Enquirer printed his picture on the magazine cover with a sexy story title to attract consumers' attention and provide a commercial advantage over competitor publications.).

Nonetheless, commercial purpose means more than merely using a person's name as part of a cast of characters in a television program advertisement that highlights the program's general plot. In this case, Appellees did no more than use the name "Wood Newton" in the text of newspaper articles announcing Burt Reynolds's debut as a character in the TV Series. Nothing indicated that Reynolds's character name was the same as Newton's name or that the fictional character in the TV Series in any way resembled Newton. Based on the evidence before the court on summary judgment, it is clear that any commercial advantage that Appellees gained by these advertisements was totally unrelated to Newton's notoriety as a country/western music performer. *See T.J. Hooker v. Columbia Pictures Indus.,* 551 F.Supp. 1060, 1062 (N.D.Ill. 1982) (no evidence that defendants adopted plaintiff's name for a television police drama to avail themselves of his reputation as an extraordinary woodcarver). We affirm summary judgment on Newton's state law misappropriation claims.

### C. Newton's Unfair Competition Claim Under The Lanham Act

Newton contends that a genuine issue of material fact exists on the likelihood of confusion between Newton and the TV Series character.[6] We disagree. Mere possibility that a consumer may be misled by Appellees' use of the name "Wood Newton" is not enough to establish a cause of action for

---

must prove a knowing use of his name or likeness for "purposes of advertising or soliciting purchases," and a direct connection "between the use and the commercial purpose." *Eastwood,* 149 Cal.App.3d at 417–18, 198 Cal.Rptr. 342.

6. Section 43(a) of the Lanham Act creates civil liability for "[a]ny person who, on or in connection with any goods or services, ... uses in commerce any word, term, [or] name, ... which—(A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person...." 15 U.S.C. § 1125(a)(1)(A).

unfair competition. In opposition to the motion for summary judgment, Newton failed to offer proof of a likelihood that customers may be confused as to the source or endorsement for the TV Series.

We arrive at our conclusion by applying the following factors relevant to a determination of likelihood of confusion: "(1) strength of the plaintiff's mark; (2) relatedness of the goods; (3) similarity of the marks; (4) evidence of actual confusion; (5) marketing channels used; (6) likely degree of purchaser care; (7) defendant's intent in selecting the mark; (8) likelihood of expansion of the product lines." *White v. Samsung Electronics America, Inc.*, 971 F.2d 1395, 1400 (9th Cir.1992) (citing *AMF, Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348–49 (9th Cir.1979)), *cert. denied,* —— U.S. ——, 113 S.Ct. 2443, 124 L.Ed.2d 660.

Applying these factors, none of the evidence before the court on summary judgment supports a finding of likelihood of confusion in this case. First, "[i]n cases involving confusion over endorsement by a celebrity plaintiff, 'mark' means the celebrity's persona[, and] ... [t]he 'strength' of the mark refers to the level of recognition the celebrity enjoys among members of society." *White*, 971 F.2d at 1400 (citations omitted). Newton's work is limited to writing songs for country/western music and performing in certain Southern states. By his own declaration, he showed only that his name is known and recognized within the country/western music industry. Newton in no way showed name recognition broad enough to cover those viewers in all sections of the country to whom Appellees direct the TV Series and its advertisements. In the overall scheme of things, given the limited appeal of his work and considering the evidence before the court on summary judgment, Newton's "mark" is not strong.

Second, for evaluating the relatedness of the goods, Newton's "goods" are "the reasons for or source of [his] fame." *Id.* Newton's fame is based on country/western music songwriting and performing. These are completely unrelated to the TV Series, which is Appellees' "goods."

The third factor is the similarity of the marks. Both parties agree that Newton's name is identical to the fictional character's name. Still, Newton's "persona" is very different from that of the fictional character, as discussed *supra.* Newton responds that the differences between himself and the fictional character actually *add* to the confusion. In fact, the differences only underscore the improbability that viewers may believe that Newton endorses the TV Series or is in any way associated with the TV Series or the fictional character.

Fourth, there was no relevant evidence of actual confusion before the court on summary judgment. In his declaration, Newton stated that people who he met for the first time asked him whether he took his eccentric name from the Burt Reynolds character. Even if we assume that viewers erroneously believe that Newton appropriated his name from the TV Series, their confusion is irrelevant to his unfair competition claim. As Appellees correctly point out, such proof does not show that any of Newton's fans has actually been confused about whether he is affiliated with the TV Series or whether the TV Series is based on his name or life. To establish unfair competition, Newton should have presented evidence that confusion by consumers impairs his reputation and career as a professional country/western songwriter and performer. He presented no such evidence.

Fifth, the evidence before the court on summary judgment shows that the marketing channels used by Newton and Appellees are different. Newton markets his musical talents by advertising live and tape-recorded performances; most live performances occur in Southern states. Appellees, on the other hand, market the TV Series on a nationwide television network and in newspapers around the country, making it available to every television viewer and many newspaper readers in the country.

The sixth factor is the likely degree of purchaser care. Although viewers of the TV Series may not be particularly careful in determining who endorses the program, we doubt that they would actually believe that a

fictional character's name represents the endorser's name. In this case, viewers are likely to perceive the fictional character as no more than a fictional character.

▆ The seventh factor is defendant's intent in selecting the mark. To raise an inference of a likelihood of confusion, Newton must show that, in selecting his name, Appellees "intended to profit by *confusing consumers*." *Toho Co. v. Sears, Roebuck & Co.*, 645 F.2d 788, 791 n. 2 (9th Cir.1981) (emphasis in original). Newton presented no evidence that Appellees intended to profit by confusing viewers into believing that Newton, the songwriter and performer, was affiliated with the TV Series.

Eighth, there is no likelihood that Appellees will expand into Newton's market. Appellees' TV Series does not compete with Newton's music. The fact that the TV Series concerns life in a small Southern town does not persuade us, as Newton urges, that its viewers are interested in country/western music or that Newton will lose fans due to the program's success.

### 2. Appeal by Newton and Childress Of Sanctions Order

▆ We review for abuse of discretion the district court's order imposing sanctions under Fed.R.Civ.P. 11. *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 405, 110 S.Ct. 2447, 2460–61, 110 L.Ed.2d 359 (1990); *United States v. Borneo, Inc.*, 971 F.2d 244, 248 (9th Cir.1992). A district court abuses its discretion in imposing sanctions when it bases its decision "on an erroneous view of the law or on a clearly erroneous assessment of the evidence." *Cooter & Gell*, 496 U.S. at 405, 110 S.Ct. at 2461.

▆ Rule 11 requires that an attorney sign a pleading, motion, or other paper, only if, "to the best of [the attorney's] knowledge, information and belief formed after reasonable inquiry[,] it is well grounded in fact and is warranted by existing law or a good faith

argument for the extension, modification, or reversal of existing law, and ... is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation." Fed.R.Civ.P. 11. "The central purpose of Rule 11 is to deter baseless filings." *Borneo, Inc.*, 971 F.2d at 254 (citing *Cooter & Gell*, 496 U.S. at 393, 110 S.Ct. at 2454). A court may not impose sanctions where the attorney "conducted a reasonable inquiry and ... determined that any papers filed with the court are well-grounded in fact, legally tenable, and not interposed for some improper purpose." *Id.* (reversing sanctions where claim was legally tenable); *Greenberg v. Sala*, 822 F.2d 882, 886–87 (9th Cir.1987) (reversing sanctions where factual errors did not render plaintiff's complaint factually frivolous); *Zaldivar v. City of Los Angeles*, 780 F.2d 823, 834–35 (9th Cir.1986) (reversing sanctions where successive filings did not amount to harassment), *abrogated on other grounds*, 496 U.S. 384, 110 S.Ct. 2447, 110 L.Ed.2d 359 (1990).

▆ We conclude that the district court abused its discretion by sanctioning Newton's attorney Childress in the amount of $10,000 for an "unnecessary and frivolous" choice of venue. In its Order, the district court explained that Childress had no good faith justification for filing the lawsuit in Illinois because, even though venue was proper, Newton's suit was only tenuously connected to Illinois. Admittedly, only one expert witness resides in Illinois, and no parties live or have their principle place of business in Illinois. However, as each Appellee conceded in the Answer to Newton's Complaint, the injury (broadcasting the TV Series) occurred in all districts, including the Northern District of Illinois, making venue proper in any district where a defendant may be found.[7] Attorneys are not under an affirmative obligation to file an action in the most convenient fo-

---

7. "A civil action wherein jurisdiction is not founded solely on diversity of citizenship may ... be brought only in (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred ... or (3) a judicial district in which any defendant may be found, if there is no district in which the action may otherwise be brought. 28 U.S.C. § 1391. In this case, each of the Appellees conceded in the Answer that venue was proper under § 1391(b)(3).

rum; their only obligation is to file in a proper forum.[8]

■ We hold that filing in an inconvenient but proper forum is not a legitimate ground for Rule 11 sanctions. The choice of an inconvenient forum is sanctionable only where the choice is made for an "improper purpose" such as harassment. We reject Appellees' attempt to characterize the Illinois filing as harassment: To constitute harassment, conduct "must *do more than in fact bother, annoy or vex the complaining party*. Harassment under Rule 11 focuses upon the improper purpose of the signer, objectively tested, rather than the consequences of the signer's act, subjectively viewed by the signer's opponent." *Zaldivar*, 780 F.2d at 831–32 (emphasis added). Because there is no evidence of improper purpose, we reverse the sanctions order.[9]

### 3. Appellees' Cross–Appeal

Appellees contend, in relevant part, that the district court erred by failing to grant their motion for attorneys' fees under Cal. Civil Code § 3344(a) or the Lanham Act. Because the same issues underpin all of Newton's claims, Appellees seek an award of all attorneys' fees incurred to defend the case (a total of $140,297.00).

Section 35 of the Lanham Act permits a court to award reasonable attorney fees to the prevailing party only "in exceptional cases." 15 U.S.C. § 1117(a). We disagree that this is an "exceptional case" warranting an award under the Lanham Act.

Cal.Civil Code § 3344(a) provides that "[t]he prevailing party in any action under this section shall also be entitled to attorneys' fees and costs." We remand to the district court to determine a proper fee award under Cal.Civil Code § 3344(a).

8. Appellees cannot rely on language from *Leroy v. Great Western United Corp.*, 443 U.S. 173, 186, 99 S.Ct. 2710, 2718, 61 L.Ed.2d 464 (1979), to show that Childress acted improperly: When "it is not clear that a claim arose in only one specific district, a plaintiff may choose between those [forums] that with approximately equal plausibility—in terms of the availability of witnesses, the accessibility of other relevant evidence, and the convenience of the defendant (but *not* of the plaintiff)—may be assigned as the locus of the claim." In *Leroy*, the Supreme Court applied an

AFFIRMED as to summary judgment; REVERSED as to sanctions order; REMANDED as to attorney fee award.

older version of § 1291(b) which permitted filing "only in the judicial district where all defendants reside, or in which the claim arose." *Id.* at 180 n. 8, 99 S.Ct. at 2714 n. 8.

9. Because we conclude that sanctions of any amount are inappropriate, we do not entertain Appellees' arguments on cross-appeal that the district court abused its discretion by limiting sanctions to $10,000.