**Shirley JONES, on Behalf of Herself and All Others Similarly Situated, Plaintiffs,**

v.

**CORBIS CORPORATION, Defendant.**

**Case No. 10–8668 SVW (CW).**

United States District Court, C.D. California.

May 25, 2011.

class action complaint against Corbis Corporation ("Defendant"). Defendant is a Nevada Corporation and an online provider of copyright licenses for images. Defendant maintains a library of millions of images and it offers copyright licenses for sale by displaying sample images on its websites. Plaintiff alleges that Defendant's act of displaying sample images violates her common law and statutory rights of publicity by exploiting her name, image, and likeness for purposes of financial gain without her consent.

Plaintiff has now moved to certify a class of similarly situated individuals and for summary judgment on her individual claims. Defendant has also moved for summary judgment, arguing that (1) Plaintiff consented to the use of her image; (2) Defendant's use is protected by the First Amendment; or (3) Plaintiff's claims are preempted by the Copyright Act. Defendant also argues that class certification is improper.

### A. History

The Court has addressed similar claims in a prior case against Defendant in *Alberghetti v. Corbis*, 263 F.R.D. 571 (C.D.Cal. 2010). In that case, the plaintiff put forth similar allegations of violations of common law and statutory publicity rights against Defendant. The Court denied class certification because it found that individual plaintiffs were not adequate representatives of class members with respect to injunctive relief and Court noted issues with providing notice to class members. *Id.* at 577–78. Subsequently, the Court granted Defendant's Motion for Summary Judgment as to the individual plaintiffs because the plaintiffs' claims were barred by the statute of limitations. *Alberghetti v. Corbis*, 09–05735–SVW (AJWx), Doc. No. 99 (C.D.Cal. May 20, 2010).

Arthur S. Gold, Gold & Coulson, Jay B. Ross, Jay B. Ross & Associates PC, Chicago, IL, Grant A. Carlson, Friedman Enriquez & Carlson, Beverly Hills, CA, Robert G. Klein, Robert G. Klein Law Offices, Los Angeles, CA, for Plaintiffs.

Laurence F. Pulgram, Kathryn J. Fritz, Leslie A. Kramer, Theis Finlev, Fenwick & West LLP, San Francisco, CA, for Defendant.

### Order Granting Defendant's Motion for Summary Judgment [32] and Denying Plaintiff's Motion for Partial Summary Judgment [26]

STEPHEN V. WILSON, District Judge.

### I. Introduction

On November 12, 2010, Shirley Jones ("Plaintiff"), an actress and vocalist, filed a

## B. Facts

### (1) Defendant's Business

The facts are uncontroverted.[1] Defendant maintains several websites that contain a library of millions of images available to prospective end-users. (Defendant's Statement of Uncontroverted Fact, "DSUF" ¶ 1). The images depict a variety of scenes, products, current events, celebrities and entertainers. (DSUF ¶ 2). Defendant obtains these images by entering into representation agreements with cultural institutions, news wire services, and professional photographers. Typically, the photographers and institutions from whom Defendant obtains images retain copyright ownership over the images and license Defendant to distribute sublicenses on their behalf. In exchange for this license to distribute additional copyright licenses to end-users, Defendant agrees to share a portion of licensing revenues with the institutions and photographers. (DSUF ¶¶ 3–5). Defendant's customers include news services, educational institutions, magazines, and media users.

In order to market and provide access to images to its customers, Defendant maintains several websites. Website users can type search terms in a search box to view available images that match these search terms. For example, users can type names of celebrities, events, or items. Low quality sample images matching those terms will appear on the website. (DSUF ¶¶ 6–9). If a user wishes to purchase a copyright license for an image, Defendant provides the copyright license for a price. The price depends on the nature of the use of the photograph, the resolution of the image, the location where the image is placed, the territory of the use of the image, the duration of the license, the exclusivity of the license, and whether the licensing model is rights-managed or royalty-free. (Feduff Decl. ¶¶ 55–56).

Defendant expressly states to its customers that it licenses only the copyright in its images and not any other rights such as trademarks or the rights of publicity. Defendant's license agreements state that licensees are responsible for determining whether additional consents are required for use. (DSUF ¶ 15). After the purchase of a license has been completed, Defendant provides the user a digital version of the image. Defendant does not sell any tangible products containing the images.

### (2) Images at Issue

Plaintiff alleges that Defendant violated her statutory and common law rights of

---

1. Plaintiff has not put forth a separate statement of genuine disputes of material fact in opposition to Defendant's statement of uncontroverted facts. Local Rule 56–2 states:

   Any party who opposes [a motion for summary judgment] shall serve and file with the opposing papers a separate document containing a concise "Statement of Genuine Disputes" setting forth all material facts as to which it is contended there exists a genuine dispute necessary to be litigated.

   As such, the Court finds the facts are uncontroverted. *See Sullivan v. Dollar Tree Stores, Inc.*, 623 F.3d 770, 779 (9th Cir. 2010) (Federal Rule of Civil Procedure 56(e)(2) requires a party to "set out specific facts showing a genuine issue for trial."). If the non-moving party fails to identify the triable issues of fact, the court must treat the moving party's evidence as uncontroverted. Local Rule 56–3; *see also International Longshoremen's Ass'n, AFL–CIO v. Davis*, 476 U.S. 380, 398 n. 14, 106 S.Ct. 1904, 90 L.Ed.2d 389 (1986) ("[I]t is not [the Court's] task *sua sponte* to search the record for evidence to support the [parties'] claim[s]."); *Carmen v. San Francisco Unified School District*, 237 F.3d 1026, 1029 (9th Cir.2001) ("A lawyer drafting an opposition to a summary judgment motion may easily show a judge, in the opposition, the evidence that the lawyer wants the judge to read. It is absurdly difficult for a judge to perform a search, unassisted by counsel, through the entire record, to look for such evidence.").

publicity by using her name, image, and likeness without her consent. Essentially, Plaintiff alleges that Defendant is violating these rights by displaying sample images of her likeness on its website. According to Plaintiff, the search feature on the websites matches her name ("Shirley Jones") with these images. Plaintiff asserts that displaying these sample images associated with her name helps Defendant sell its product—a copyright license for the images.

Defendant's display of ten sample photographs of Plaintiff is specifically alleged to have violated Plaintiff's rights of publicity. It is undisputed that the ten photographs were taken by individual photographers who then licensed the images to Defendant for the purpose of selling additional licenses to end-users. Each of the ten photographs were taken on "red carpets." It is custom and practice in the entertainment industry for celebrities to walk down a red carpet surrounded by professional photographers and video crews before entering an event. Celebrities may generally choose to walk down the red carpet or enter the event through another way where they will not be photographed. Celebrities who walk down the red carpet generally pose for photographers and respond to their requests to smile, or to look in their direction. Jones Depo. 144: 9–14. Notices are sometimes posted at these events stating that the celebrities entering the red carpet consent to being photographed and recorded, and also to having their name or likeness used in connection with the event. (DSUF ¶¶ 26–36).

It is undisputed that Plaintiff posed for and consented to the taking of each of the ten photos at issue. Plaintiff testified that she knew one photographer, Frank Trapper, who took four of the photos at issue. Plaintiff testified that she knew that Frank Trapper distributed his images to the press, but was not aware how he did so. However, Plaintiff understood that a photographer such as Trapper would have to display his images to prospective buyers to allow the buyers to select a desired image. Plaintiff stated that she would not be surprised if photographers such as Trapper worked with other people to make his images available to the press. Plaintiff has not placed any limits on the distribution of photographs taken at red carpet events over her 40 year career.

## II. Legal Standards

### A. Summary Judgment

Rule 56(c) requires summary judgment for the moving party when the evidence, viewed in the light most favorable to the nonmoving party, shows that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(c); *Tarin v. County of Los Angeles*, 123 F.3d 1259, 1263 (9th Cir.1997).

The moving party bears the initial burden of establishing the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The moving party may satisfy its Rule 56(c) burden by " 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325, 106 S.Ct. 2548. Once the moving party has met its initial burden, Rule 56(e) requires the nonmoving party to go beyond the pleadings and identify specific facts that show a genuine issue for trial. *See id.* at 323–24, 106 S.Ct. 2548; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A scintilla of evidence or evidence that is merely colorable or not significantly probative does not present a genuine issue of material fact. *Addisu v. Fred Meyer,*

198 F.3d 1130, 1134 (9th Cir.2000). Only genuine disputes "where the evidence is such that a reasonable jury could return a verdict for the nonmoving party" over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. *See Anderson,* 477 U.S. at 248, 106 S.Ct. 2505.

### B. Class Certification

The District Court has broad discretion to grant or deny a motion for class certification. *See Zinser v. Accufix Research Inst., Inc.,* 253 F.3d 1180, 1186 (9th Cir. 2001), *amended by* 273 F.3d 1266 (9th Cir.2001); *see also Molski v. Gleich,* 318 F.3d 937, 947 (9th Cir.2003).

In a motion for class certification, the burden is on the moving party to make a prima facie showing on each of the elements of Rule 23(a) and at least one of the class types under Rule 23(b). *See Zinser,* 253 F.3d at 1186. Under Rule 23(a), a plaintiff must demonstrate numerosity, commonality, typicality, and adequate representation of the class interest. Fed. R.Civ.P. 23(a). Under Rule 23(b), the moving party must also show that (1) denying class certification would create a risk of inconsistent adjudications or would substantially impair or impede the interests of other class members; (2) injunctive or declaratory relief is appropriate respecting the class as a whole; or (3) questions of law or fact common to class members predominate over any individualized

questions and that a class action is superior to other available methods of adjudicating the controversy. Fed.R.Civ.P. 23(b).

## III. Discussion

### A. Evidentiary Objections

██ Defendant Corbis objects to statements made in two declarations in support of Plaintiff's Motion for Summary Judgment. The first statement is Plaintiff's statement that she did not "authorize or consent to Corbis' use of the ten photographs." Jones Decl. ¶ 5. The ultimate determination of consent is a legal conclusion. *United States v. Toribio–Lugo,* 376 F.3d 33, 38 (1st Cir.2004) ("Whether the facts as found add up to consent is a legal determination."). Defendant argues that while Plaintiff may testify to facts relevant to the legal determination of consent, she may not testify as to the legal determination itself. *See* Fed. R. Civ. P. 56(c)(4); Civil L.R. 7–7; *Nationwide Transport Finance v. Cass Information Sys., Inc.,* 523 F.3d 1051, 1059–60 (9th Cir.2008) (affirming district court's decision to exclude witness' legal conclusion as to violation of UCC); *See also Sullivan v. Dollar Tree Stores, Inc.,* 623 F.3d 770, 779 (9th Cir. 2010) ("Federal Rule of Civil Procedure 56(e)(2)" requires a party to "set out specific facts showing a genuine issue for trial."). The Court agrees, and SUSTAINS Defendant's objection.[2]

---

**2.** To the extent that Plaintiff intends to introduce this evidence to show that she did not *expressly* state in writing, or otherwise, that she consented to Defendant's use of the photographs, it is admissible. However, Defendant does not suggest that Plaintiff *expressly* consented, but argues instead that Plaintiff manifested her consent through her conduct and inaction. As discussed below, even if Plaintiff subjectively believed she did not consent, she did not manifest this belief. Consent

is determined from the reasonable viewpoint of another person, not from Plaintiff's unexpressed subjective beliefs. Restatement Second of Torts § 892 ("Consent is willingness in fact for conduct to occur. It may be manifested by action or inaction and need not be communicated to the actor. [ ] If words or conduct are reasonably understood by another to be intended as consent, they constitute apparent consent and are as effective as consent in fact."); CACI § 1302 (same).

■ Defendant also objects to the Declaration of Arthur Gold, Plaintiff's attorney, who states that "[c]elebrities and professional models usually sign a limited release or 'model release' that specifies the particular ways their image and name may be used. If a use exceeds what's permitted under the limited release, the person can sue for breach of the agreement." Gold. Decl. ¶ 5 n. 1. Defendant argues that there is no foundation or personal knowledge for Gold's assertion. The Court agrees, and SUSTAINS Defendant's objection.

**B. Cross Motions for Summary Judgment**

Defendant argues that summary judgment is appropriate because (1) Plaintiff consented to Defendant's distribution of copyright licenses; (2) Defendant is entitled to First Amendment protection from Plaintiff's right of publicity claim; or (3) Plaintiff's claim is preempted by the Copyright Act. The Court GRANTS Defendant's Motion for Summary Judgment because Plaintiff consented to Defendant's distribution of copyright licenses.

■ "To sustain a common law cause of action for commercial misappropriation, a plaintiff must prove: (1) the defendant's use of the plaintiff's identity; (2) the appropriation of plaintiff's name or likeness to defendant's advantage, commercially or otherwise; (3) lack of consent; and (4) resulting injury." *Downing v. Abercrombie & Fitch*, 265 F.3d 994, 1001 (9th Cir. 2001) (internal citations and quotations omitted); *Newcombe v. Adolf Coors Co.*, 157 F.3d 686, 692 (9th Cir.1998) (same); Cal. Civ.Code § 3344(a) ("Any person who knowingly uses another's name, voice, signature, photograph, or likeness, in any manner ... without such person's prior consent ... shall be liable for any damages sustained by the person or persons injured as a result thereof.").

■ Furthermore, California Civil Code § 3344 provides a statutory remedy for commercial misappropriation. "Under section 3344, a plaintiff must prove all the elements of the common law cause of action. In addition, the plaintiff must allege a knowing use [without consent] by the defendant as well as a direct connection between the alleged use and the commercial purpose." *Id.*

**(1) Lack of Consent**

■ Consent to use a name or likeness need not be express or in writing, but it may be implied from the consenting party's conduct and the circumstances of the case. *See Newton v. Thomason*, 22 F.3d 1455, 1461 (9th Cir.1994) (granting summary judgment to defendant in right of publicity suit because plaintiff failed to show a lack of consent even though plaintiff never expressly consented but expressed excitement about the use of his likeness and never objected to the use of his likeness over several months); *Hill v. National Collegiate Athletic Assn.*, 7 Cal.4th 1, 26 Cal.Rptr.2d 834, 849, 865 P.2d 633 (1994) ("[T]he plaintiff in an invasion of privacy case must have conducted himself or herself in a manner consistent with an actual expectation of privacy, i.e., he or she must not have manifested by his or her conduct a voluntary consent to the invasive actions of defendant."); Rest.3d Unf. Comp. § 46, cmt. f. ("In the absence of an applicable statute requiring consent in writing, consent can also be implied from conduct or inaction reasonably interpreted as manifesting consent."); Cal. Civ. Code § 3344 (not requiring consent in writing).

Here, Plaintiff does not dispute that she consented to having individual photographers at red carpet events photograph her

likeness and distribute the images. *Jones Depo.* 153:12–155:10; 163:7–12. Plaintiff concedes that for the ten photographs at issue, she chose to walk down the red carpet knowing photographers would take her picture. Plaintiff also does not dispute that it is the custom and practice in the entertainment industry that red carpet photographs are widely used and disseminated. Trapper Decl. ¶ 6; Teetzel Decl. ¶ 6. When Plaintiff is on the red carpet, it is Plaintiff's practice to pose for photographers and agree to their requests to smile or to look in their direction. *Jones Depo.* 144: 9–14. Finally, Plaintiff does not dispute that for at least one of the events at which the pictures were taken, a notice was posted at the entrance of the red carpet. Teetzel Decl. Ex. A. The notice stated that by entering the premises, Plaintiff consented to being photographed, and her name, voice and likeness being exploited by any and all means in connection with the event without limitation. *Id.*

■ Plaintiff's only argument is that she did not consent to Defendant's placement of sample images on its websites for the purpose of soliciting customers to sell copyright licenses for the images. However, as discussed earlier, Plaintiff's subjective beliefs as to her consent are not determinative; consent is measured from Plaintiff's manifested action or inaction.[3] Restatement of Torts § 892; CACI § 1302. It is undisputed that Plaintiff voluntarily posed for photographers, who she knew would display her images to prospective buyers, for over 40 years without objection. It was well understood in the entertainment industry that potential customers would not purchase images they could not see before the purchase. *Jones Depo.* 153:21–25; 154:1–3; Trapper Decl.

¶¶ 10, 14. Prior to the use of the internet to display images to prospective customers, photographers would hand deliver catalogues of sample images so potential customers could select images to purchase. Trapper Decl. ¶ 14. Thus, not only did Plaintiff understand that her red carpet photographs would be displayed to potential customers to solicit sales and do nothing for over 40 years, but the undisputed record shows it would be contrary to well-established industry practices for a celebrity to consent to the sale and distribution of her photographs but not consent to the display of the photographs to potential customers to facilitate sales.

*Newton v. Thomason,* 22 F.3d 1455, 1461 (9th Cir.1994), is directly applicable to the facts discussed above. In *Newton,* the Ninth Circuit granted summary judgment to defendants because the plaintiff asserting a violation of its right of publicity failed to show a lack of consent. The court noted that the plaintiff did not expressly consent to the use of his name, nonetheless, it concluded that no "fair-minded jury could find non-consent based on [the plaintiff's] July 18, 1990 letter and subsequent conduct." *Id.* In the July 1990 letter to the defendants, the plaintiff stated that he and others were excited that the defendants were using his name. Further, the plaintiff never objected to the use of his name until December 1990, several months after he found out his name was being used. Plaintiff attempted to show that the defendants did not believe there was consent by pointing to the fact that the defendant's lawyer later requested consent in writing. However, in rejecting this argument, the Ninth Circuit found that the lawyer's cautiousness in seeking express consent did not override the plaintiff's fail-

---

**3.** In any case, Plaintiff acknowledges that she understood at the time that individual photographers taking her pictures would have to display their photographs to sell them. *Jones Depo.* 153:21–25; 154:1–3.

ure to object. This fact coupled with Plaintiff's expression of excitement in his letter made it obvious that the plaintiff did consent. *Id.* As in *Newton,* Plaintiff voluntarily posed on the red carpet for photographers who she knew would sell her likeness and name. Plaintiff has not objected to such sales and the record makes clear that any objections would be contrary to industry custom given the circumstances. Additionally, even further damaging than the facts in Newton where the defendants later sought express consent from the plaintiff, Plaintiff can point to no evidence showing photographers had a reason to believe she did not consent to their use of her name and likeness in selling red carpet photographs. Thus, Plaintiff does not attempt to argue that individual photographers would be unable to post her photographs on websites to solicit sales.

Instead, Plaintiff argues that the scope of her consent to allow the use and distribution of her likeness is limited only to the efforts of the individual photographers who took the photographs to distribute their photographs. She contends that her consent does not extend to Defendant's display of her images to solicit sales of the image. However, Plaintiff does not show that a genuine dispute of material fact exists as to lack of consent.[4] Moreover, Plaintiff's legal authority is entirely distinguishable.

Plaintiff cites to *Perfect 10, Inc. v. Talisman Communications, Inc.,* 2000 WL 364813, 2000 U.S. Dist. LEXIS 4564 (C.D.Cal.2000). In *Perfect 10,* the district court entered default judgment against a website operator, finding the defendant liable under § 3344(a) for posting images of models on its website. The models had expressly consented to the use and display of their images with the plaintiff, Perfect 10. However, defendant took the images from Perfect 10's website and posted them on its own website. Plaintiff argues that *Perfect 10* stands for the proposition that "the mere act of assigning rights to publicity to one entity does not allow an unrelated third party to appropriate the pictures without prior consent." Opp'n at 3. However, the case contains no discussion of this general proposition. Nowhere does the court state that the models' consent was required, instead the court expressly states only Perfect 10's consent, as the models' assignee, was required to post the images. *Id.* at *3–4, 2000 U.S. Dist. LEXIS 4564 at *9 ("All of the Defendant's acts were performed without the permission, license or consent of Perfect 10."). In this case, Plaintiff contends that Defendant needs *her consent,* not just individual photographers' consent as assignors, to place sample images on its website. Even if *Perfect 10* is applicable to the issues in this case, it is distinguishable because the photographers taking her photos gave Defendant consent to display sample images. In *Perfect 10,* there was no relationship between Perfect 10, the entity to which consent was given by the models, and the defendant. In fact, the parties were competitors and the defendant appropriated the images from Perfect 10 without permission. By contrast, the undisputed record in this case establishes that Defendant is the assignee of the photographers that took Plaintiff's photos. Individual photographers retain copyright ownership over their photos in exchange for Defendant's promise to distribute additional sublicenses and to share a portion of the proceeds. The photographers assign all of their rights in the images to Defendant, which

---

**4.** As discussed above, even if Plaintiff's conclusory legal conclusion as to her consent were admissible (which it is not), Plaintiff's unexpressed subjective beliefs are irrelevant to whether photographers reasonably believed Plaintiff had consented.

in turn sublicenses copyrights to end-users with the express limitation that end-users must obtain additional rights (such as the right of publicity) on their own.

For the reasons discussed above, Plaintiff's remaining authority is also inapplicable. *KNB Enterprises v. Greg Matthews*, 78 Cal.App.4th 362, 373, 92 Cal.Rptr.2d 713 (2000) ("In this case, although the models consented to have plaintiff display, copy, publish, or assign the photographs as he pleased, *plaintiff* did not assign those rights to defendant.") (emphasis added); *Pohle v. Cheatham*, 724 N.E.2d 655, 661 (2000) (finding wife's consent to being privately photographed by her husband could not be extended to cover husband's public distribution of photographs); *Mihail Simeonov v. Albert Ashforth, Inc.*, 159 Misc.2d 54, 602 N.Y.S.2d 1014 (1993) (finding defendant did not consent to public distribution of plaster casting of her face when defendant hired plaintiff to produce casting of her face for the limited purpose of showing casting had no harmful effects to select individuals).

Furthermore, Plaintiff never indicated that her consent was contingent on the individual photographers distributing the photos themselves. In fact, the undisputed factual record shows that Plaintiff knew and understood that photographers on the red carpet could employ third parties to assist them in distributing her photos. However, Plaintiff made no objection. Further, undisputed custom and practice evidence supports a finding of consent. Defendant merely maintains a modern-day version of the catalogues of sample images that would be hand-delivered to potential buyers in the past. Defendant published sample images as an assignee in place of the photographers. Plaintiff testified that customers would not buy images without seeing what they were buying and also that she consented to the sale of her image by photographers. In light of these undisputed facts, no reasonable jury could find that Defendant's display for this purpose was not consensual. Any other holding would require that individual photographers themselves market their photos or obtain express consent from each subject prior to utilizing a third party distributor to market their red carpet photos.[5] Plaintiff presents no basis for such a. requirement.

It is important to note that the Court's reasoning does not broadly restrict Plaintiff's right of publicity. Here, Defendant sells only the copyright license to the images taken by the photographers—Plaintiff's likeness is not used to advertise any other product but the copyright license to the image itself. The Court's holding is thus limited to the fact that Plaintiff consented to the display of her likeness for the purpose of distributing the images themselves. Further, the Court has found that Plaintiff consented to this display whether or not the displaying parties are the photographers or third parties like Defendant that merely act as distributors for the photographers. The Court's reasoning does not address whether Plaintiff's consent encompasses any other type of display. For example, the Court's holding leaves Plaintiff's rights of publicity undisturbed in cases where a defendant uses Plaintiff's image to advertise an unrelated product such as a food item or if a defendant transforms Plaintiff's image into a separate product.

---

**5.** As discussed earlier, this express consent would be in addition to notices already posted at the entrance to some red carpet events, the general industry knowledge that red carpet photographs are distributed widely, and Plaintiff's knowledge that photographers may use other persons in helping them distribute their photos.

For the reasons discussed above, Defendant's Motion for Summary Judgment is GRANTED.

## C. Motion for Class Certification

Having granted summary judgment to Defendant on Plaintiff's common law and statutory right of publicity claims, Plaintiff's Motion for Class Certification is moot. However, the Court notes that even if Plaintiff's claims survived summary judgment, Plaintiff did not meet her burden to show that the claims are susceptible to a class action lawsuit.[6] The Court's consent analysis above is highly individualized and depends on the circumstances surrounding each photograph, Plaintiff's knowledge of the circumstances, Plaintiff's past industry experience and conduct, and other evidence of Plaintiff's conduct that would reasonably imply consent. Thus, Plaintiff's claims are atypical, and questions of law and fact common to members of the class do not predominate over questions affecting individual members under Rule 23(b)(3). *See In re N.D. Cal., Dalkon Shield Prods. Liab Litig.*, 693 F.2d 847, 855 (9th Cir.1982); *In re Wells Fargo Home Mortgage Overtime Pay Litig.*, 571 F.3d 953, 959 (9th Cir.2009); *see also Gartin v. S & M Nutec LLC*, 245 F.R.D. 429, 434 (C.D.Cal.2007) ("Where the substantive claims depend on individual permutations ... the claims of the named plaintiffs who have the same general complaint against the defendant as the class are not typical.") (quoting *Jones v. Allercare*, 203

F.R.D. 290, 299 (N.D.Ohio 2001) (quotations omitted)).

## IV. Conclusion

Defendant's Motion for Summary Judgment is GRANTED and Plaintiff's Motion for Summary Judgment is DENIED.

IT IS SO ORDERED.

---

**6.** The Court also notes that Plaintiff is an inadequate representative because she does not fall within the class definition, which includes:

> All California residents, whose names, images, or likenesses, without their permission, have been exploited by Corbis, *by selling licenses* for these names, images, or likenesses which are accessed by consumers through a name search on the Corbis

websites, during the applicable statute of limitations time period *and then sold to these consumers* via Corbis' websites, including www.corbis.com, www.corbismotion.com, or www.corbisoutlines.com. (Emphasis added).

Here, the undisputed evidence establishes that licenses to the ten photos at issue were never sold by Defendant. Plaintiff is not included in the purported class.